Betty L. STOREY, as Administratrix of the Estate of Richard W. Storey, Deceased, Libelant,

v.

The GARRETT CORPORATION, a corporation, et al., Respondents.

George COPE, Administrator of the Estate of Gerald W. Cope, Deceased, Libelant,

v.

AIRESEARCH AVIATION SERVICE COMPANY, a Division of the Garrett Corporation, the Garrett Corporation, a California corporation, et al., Respondents.

Beatrice McGOVERN, Administratrix of the Estate of Gerald E. McGovern, Deceased, Libelant,

v.

AIRESEARCH AVIATION SERVICE COMPANY, a Division of the Garrett Corporation, the Garrett Corporation et al., Respondents.

Nos. 64–1748, 66–1982 and 66–1983.

United States District Court
C. D. California.

Nov. 15, 1967.

5. Cf. TSS Sportswear, Ltd. v. Swank Shop (Guam) Inc., 380 F.2d 512, 517 (9th Cir. 1967).

Haley, McInerney & Dillon, Haradon Dillon, Oakland, Cal., Demanes & Jennings, Burlingame, Cal., for plaintiff Betty L. Storey.

Demanes & Jennings, A. Lee Sanders, Burlingame, Cal., for plaintiffs Betty L. Storey, George Cope and Beatrice McGovern.

O'Melveny & Myers, William W. Vaughn, Patrick Lynch, Los Angeles, Cal., for defendant Consolidated American Services and for Facilities Management Corp.

Kirtland & Packard, Philip S. Paul, Los Angeles, Cal., for defendant Aloha Airlines.

ORDER DENYING PLAINTIFFS' MOTION TO ADD FACILITIES MANAGEMENT CORPORATION AS A RESPONDENT IN STOREY V. THE GARRETT CORPORATION, ET AL, AND TO SUBSTITUTE FACILITIES MANAGEMENT CORPORATION FOR DOE XII IN COPE v. AIRESEARCH AVIATION COMPANY and McGOVERN V. AIRESEARCH AVIATION COMPANY

HAUK, District Judge.

These are three consolidated libels under the Federal Death on the High Seas Act. 46 U.S.C.A. §§ 761–768. All are based on the disappearance of a DC–4 airplane, N–4726–V, while en route from Honolulu to Los Angeles on March 28, 1964. The Storey action was filed in this district on December 16, 1964. The Cope and McGovern actions were filed in the Northern District of California on March 24, 1966. On motion of defendant Aloha Airlines,[1] the Cope and McGovern actions were transferred to this district. Ultimately, all three actions were consolidated by order of this Court entered January 16, 1967.

The present motion seeks, in effect, to make Facilities Management Corporation (FMC) an additional defendant in each of these actions. FMC was not originally named in any of these three libels because, as plaintiffs explain it:

"The decedents were employees of FMC at the time of this crash. They were employed on United States military bases in the Pacific. As such, they came within the provisions of the Defense Bases [sic] Act, Title 42, section 1651–1654, U.S.C.A. Section 1651 (c) provides that the remedy therein is exclusive. Hence, since FMC was the employer of the decedents, and since such employment fell within the scope of the Act, the heirs of the decedent were precluded from sustaining an action at law or an admiralty arising from this occurrence. The net result was that FMC did not have the identity of a potential party respondent in these libels. Hence, FMC was not joined." Memorandum of Points and Authorities Supporting Libelants' Motion to Amend These Libels. p. 2, line 30–p. 3, line 8.

On May 8, 1967, the United States Supreme Court handed down its decision in Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967). Plaintiffs assert that the Jackson decision has "greatly undermined, if not abolished" the effect of 42 U.S.C. § 1651(c), the so-called exclusive remedy provision of the Defense Base Act. Thus, plaintiffs assert, Jackson entitles them to add FMC as an additional defendant by motion pursuant to Rule 15(c). The Court has concluded that these motions cannot be allowed both because the statute of limitations bars any claim these plaintiffs may have against FMC, and because the Jackson decision is inapplicable here.

STATUTE OF LIMITATIONS QUESTION

On March 28, 1966, the two-year period of limitation following the occurrence upon which these libels are based, expired. 46 U.S.C. § 763. Since that date, any claim these plaintiffs may have against FMC, and their remedy thereon, has been barred as a matter of law. It was not until almost 14 months after this bar had been raised that the Supreme Court handed down its decision in the Jackson case. Whatever the meaning of that decision, it cannot reasonably be held to have revived a cause of action which had been extinguished by lapse of the

1. In the spirit of the Amended Rules, the Court will refer to the parties as either plaintiffs or defendants rather than as libelants and respondents.

statute of limitations prior to the date of its entry.

■■■■ The statute of limitations embodied in the Death on the High Seas Act has the effect of both extinguishing the claim and barring the remedy. Batkiewicz v. Seas Shipping Co., 54 F.Supp. 789 (S.D.N.Y.1941); In re Agwi Nav. Co., 89 F.2d 11 (2nd Cir. 1937). As a result, the person in whose favor the statute has run acquires a right which cannot be taken from him without due process of law. It has been held that even Congress cannot revive a cause of action where the statute of limitations has both extinguished the claim and barred the remedy. William Danzer & Co. v. Gulf and Ship Is. R. Co., 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925); Lundquist v. Coddington Bros., Inc., 202 F.Supp. 19 (W.D.Wis.1962); Annot. "Power of Legislature to Revive Right of Action Barred by Limitations," 133 A.L.R. 384, 389 (1940).

If Congress itself could not by statute revive a cause of action against FMC which the statute of limitations has extinguished, this Court is certainly unable to accomplish the same result on the basis of the Supreme Court's *Jackson* decision. Nothing in that opinion even intimates that such a result could be tolerated.[2] Accordingly, any claim plaintiffs may have against FMC remains barred by the statute of limitations without regard to the effect *Jackson* may have on these libels.

■■■■ Plaintiffs seek to avoid the effect of the foregoing rule by reliance on the "relation back" doctrine of Rule 15(c) of the Federal Rules of Civil Procedure. Such reliance cannot be justified. It has long been recognized that the "relation back" doctrine does not enable a plaintiff to join entirely new parties as defendants after the statute of limitations has run. Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Lewis v. Lewis, 358 F.2d 495 (9th Cir. 1966). The 1966 amendment liberalizing Rule 15(c) has not changed this basic premise. King v. Udall, 266 F.Supp. 747, 748–749 (D.C. 1967) Advisory Committee Note, 28 U.S.C.A. Rule 15, 1966 Supp. at 83.

The specific requirements now set out in Rule 15(c) are designed to assist the court in determining whether a particular party is "new" within the meaning of the foregoing cases. One of those requirements, and the only one which need be considered for purposes of this motion, is that " * * * the party to be brought in by amendment * * * (2) *knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. * * * "*

Plaintiffs contend that there is a "mistake concerning identity" here because prior to *Jackson* they were under the "mistaken belief" that the exclusive remedy provision of the Defense Base Act precluded their bringing an action against FMC. It was only after the Supreme Court had handed down the *Jackson* decision, plaintiffs say, that they first became aware of their "mistake concerning the identity" of FMC. Thus, they argue, the requirements of the second clause of Rule 15(c) have been satisfied.

It might be observed that, in the opinion of this Court, plaintiffs' real "mistake" lies in their interpretation of the

---

2. It is instructive in this regard to note that in a number of recent cases in which the courts have overturned a long-recognized immunity from suit—in this case a governmental immunity—they have explicitly recognized that their decisions could not have the effect of reviving claims barred by the statute of limitations. Stone v. Arizona Highway Comm., 93 Ariz. 384, 381 P.2d 107, 112 (1963); Scheele v. City of Anchorage, 385 P.2d 582, 584 (Sup.Ct., Alaska 1963); Cf. Deeves v. Fabric Fire Hose Co., 19 A.D.2d 735, 242 N.Y.S.2d 955 (1963).

*Jackson* decision, while the meaning they originally attributed to section 1651(c) was correct. The construction which plaintiffs seek to put on the language of Rule 15(c), moreover, would seem to strain it beyond the breaking point, but even if their argument be granted, it does not go far enough to satisfy the requirements of Rule 15(c) (2).

The second clause of Rule 15(c) requires more than a mere "mistake concerning identity." It requires that the party to be brought in by amendment *knew or should have known* of the existence of that mistake. Plaintiffs have conceded, both in their moving papers and at oral argument, that until *Jackson* was handed down, there was no way of knowing of the existence of the so-called mistake on which they rely. Plaintiffs, although they were advised by skilled counsel, had no intimation that FMC was not entitled to the immunity apparently conferred by Section 1651(c). The courts as well were apparently unaware of that fact. This being so, it would be anomalous for this Court to hold that Rule 15 (c) (2) requires that potential defendants enjoy a greater power of foresight than that possessed either by the plaintiffs or the Judiciary.

Plaintiffs have failed to show the actual or imputed knowledge of mistake which Rule 15(c) requires in order to make the doctrine of relation-back applicable here. Accordingly, the statute of limitations would bar the joinder of FMC at this time, even if the Court were to accept their interpretation of the *Jackson* case. Plaintiffs' motion, however, must be denied for the additional reason that the *Jackson* case is not controlling, and indeed is inapplicable on the facts presented here.

THE EXCLUSIVE REMEDY QUESTION

Jackson v. Lykes Bros. Steamship Co. is without question a landmark case. Because this fact is so apparent, there may be a tendency to conclude that *Jackson* represents a wider departure from the established pattern of the law than is actually the fact. After a careful reading of *Jackson* and more importantly of the cases on which *Jackson* is based, the Court is convinced that *Jackson* is of considerably more narrow application than plaintiffs suggest.

The Court which decided *Jackson* was of the opinion that it merely confirmed and applied the earlier case of Reed v. S.S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). *Reed*, in turn, drew its substance from earlier decisions in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). For a discerning understanding of the meaning of *Jackson*, therefore, at least these three cases must also be read.

The first stone in the foundation of the *Jackson* opinion is *Sieracki*. In *Sieracki*, a stevedore employed by an independent contractor sued the owner of a ship to recover for injuries sustained as a result of the ship's unseaworthiness. The ship owner defended on the ground that the legal obligation to maintain a vessel in a seaworthy condition was an incident to the seaman's contract and thus the liability for unseaworthiness could not be asserted by persons other than actual seamen employed on the vessel.

The Supreme Court rejected this argument and held that the stevedore, although not a seaman and employed by an independent contractor, may sue the owner of a vessel upon which he is working if injured as a result of the vessel's unseaworthiness. The basis of the *Sieracki* decision is the unique and stringent nature of a ship owner's warranty of seaworthiness.

In order to demonstrate the special character of this doctrine, the Supreme

Court analyzed the content and effect of centuries of admiralty jurisprudence. It noted that admiralty courts had from the earliest times rejected "the erroneous idea that liability (for unseaworthiness) is founded in negligence, and therefore may be defeated by the common-law defenses of contributory negligence, assumption of the risk, and the fellow-servant rule. * * *" 328 U.S. 85, 93, 66 S.Ct. 872, 877. The Court went on to note that while there had never been a consistent rationalization of the warranty of seaworthiness, the net result of admiralty decisions was to identify that warranty as a special response to the special needs of the maritime industry, a form of absolute liability expressly fashioned for the unique hazards of seagoing commerce. 328 U.S. 85, 93–95, 66 S.Ct. 872. The lesson of *Sieracki* is that the warranty of seaworthiness is an original creation of admiralty law, a special remedy separate in origin, content and scope from the common law theories of tort liability which are involved in these actions.

Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., which followed ten years later, involved the doctrine of implied indemnity and held that a ship owner who had been found liable to a stevedore for unseaworthiness could sue the stevedore's employer on the theory of implied indemnity where the stevedore's injury had resulted from the employer's primary negligence. *Ryan* simply disclosed that the "exclusive remedy" provisions of the Longshoreman's Compensation Act did not preclude the imposition of the identical economic burden where the liability of the employer was founded upon an entirely separate legal obligation.

Reed v. S.S. Yaka represented the Supreme Court's next step in the direction of *Jackson*. In *Reed*, a longshoreman brought a libel against a ship on which he had been working to recover for injuries sustained as a result of the vessel's unseaworthiness. It so happened that his employer was the owner of the ship *pro haec vice*. The employer's defense was that since he could not be held liable personally because of the exclusive remedy provisions of the Compensation Act, his ship could not be held liable *in rem*. This defense presented the subtle question of whether personal liability of the owner is essential to the imposition of *in rem* liability on a ship. The Supreme Court avoided this question, however, by concluding that the exclusive remedy provisions of the Longshoreman's Compensation Act did not preclude the plaintiff from bringing a personal action against his employer on the warranty of seaworthiness.

The special nature of a ship owner's warranty of seaworthiness, the Court held, created a separate path to liability comparable to the doctrine of implied indemnity involved in *Ryan*. Further, just as the common law defenses of assumption of the risk, contributory negligence, and lack of privity were held in *Sieracki* to have no effect on a ship owner's liability for unseaworthiness, the Court would not presume that Congress had intended that the exclusive remedy provisions of the Longshoreman's Compensation Act would be a defense against the otherwise absolute liability which a ship owner has for the seaworthiness of his vessel.

The Court's examination of these analogies was thus expressed:

"Pan-Atlantic relies simply on the literal wording of the statute, and it must be admitted that the statute on its face lends support to Pan-Atlantic's construction. But we cannot now consider the wording of the statute alone. We must view it in light of our prior cases in this area, like *Sieracki*, *Ryan* and others, the holdings of which have been left unchanged by Congress. In particular, we pointed out several times in the *Sieracki* case, which has been consistently followed since, that *a shipowner's obligation for seaworthiness cannot be shifted about, limited*

*or escaped by contracts or by the absence of contracts and the shipowner's obligation is worded, not in contract, but in the hazards of the work.* \* \* \* In the light of this whole body of law, statutory and decisional, only blind adherence to the superficial meaning of the statute could prompt us to ignore the fact that Pan-Atlantic was not only an employer of longshoremen, but also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute and nondelegable obligation of seaworthiness which it should not be permitted to avoid." 373 U.S. 410, 414–415, 83 S. Ct. 1349, 1353 [emphasis supplied]

It was in this context that *Jackson* was decided. Jackson's widow sued in state court, both on the theory of negligence and on the theory of unseaworthiness. Aside from the mention of this fact, the *Jackson* court made no further reference to the first of these theories. The case turned entirely on *Reed's* holding that a ship owner's warranty of seaworthiness, because of its special and unique nature, can be asserted by employees notwithstanding the exclusive remedy provisions of the Longshoreman's Compensation Act. "(T)he traditional humanitarian remedy for seaworthiness was not to be destroyed by the kind of employment contract that a ship owner made with the people who worked on the ship." 386 U.S. 731, 735, 87 S.Ct. 1419, 1422.

From the foregoing review of the cases out of which Jackson v. Lykes Bros. Steamship Co. developed, it becomes apparent that the holding of the *Jackson* case is dependent upon the presence of liability for unseaworthiness, a unique obligation not present in the cases at hand.[3] Plaintiffs' libels are based solely

on the common law theory of negligence, and only on that theory can they recover. There is no *Sieracki, Reed* or *Ryan* lurking in the background of these cases. Neither is there a "whole body of law, statutory and decisional," which has modified the Congressional intent expressed in Section 1651(c) of the Defense Base Act. The special circumstances which led the Supreme Court to draw a narrow exception to the scope of the exclusive remedy provisions in *Jackson* are not present here. This Court, therefore, holds that even if the statute of limitations had not run in its favor, FMC would be immune from suit by these plaintiffs. 42 U.S.C. § 1651(c).

For the reasons explained, the Court now makes and enters the following:

ORDER:

Plaintiff Betty L. Storey, having moved for an order of this Court permitting the amendment of her libel to add Facilities Management Corporation as a defendant; and,

Plaintiff George Cope and Beatrice McGovern, having moved for an order of this Court permitting them to substitute the name Facilities Management Corporation for the fictitious Doe XII in their libels; and

It appearing from the record herein that the occurrence upon which these libels are based took place on March 28, 1964; and

That the applicable period of limitations was two years as provided in 46 U.S.C. § 763; and

The court being apprised on the premises and having heard the arguments of counsel.

It is so ordered that the motion of plaintiffs Storey, Cope and McGovern be and the same is hereby denied.

---

3. Plaintiffs make much of the fact that a count for negligence was included in the plaintiffs' complaint in *Jackson.* As stated, the Supreme Court's opinion turns entirely on the question of liability for unseaworthiness. As this Court reads the Supreme Court's mandate, the Louisiana courts were free to again enter a dismissal of the negligence count on proper motion. 386 U.S. 731, 735–736, 87 S.Ct. 1419, 18 L.Ed.2d 488.