Iberia HAMPTON, et al., Plaintiffs,

v.

Edward V. HANRAHAN, et al., Defendants,

and

The Federal Bureau of Investigation; the Department of Justice; the United States of America; the Estate of Clyde Tolson, on behalf of J. Edgar Hoover; the Estate of William Sullivan; George Moore, John Mitchell, Jerris Leonard; the City of Chicago, a Municipal Corporation; and Cook County, a Local Public Corporation, Proposed Defendants.

Nos. 70 C 1384, 70 C 2371, 70 C 3026 and 70 C 3029.

United States District Court, N. D. Illinois, E. D.

Aug. 4, 1981.

Francis E. Andrew, Dennis Cunningham, Kermit Coleman, Jeffrey Haas, Cornelius E. Toole, James D. Montgomery, Chicago, Ill., William J. Bender, Arthur Kinoy, New York City, Jonathan M. Hyman, Hollis Hill, Charles Hoffman, Deutsch, Haas, Hill & Schmiedel, Chicago, Ill., David Scribner, New York City, Morton Stavis, Newark, N.J., for plaintiffs.

Richard Curry, Corp. Counsel, Camillo F. Volini, John P. Coghlan, Sp. States Atty. of Cook County, Benjamin E. Novoselsky, Asst. Corp. Counsel, Roger H. Dusberger, Sidley & Austin, Arthur R. Waddy, Partee & Green, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiffs have filed a motion for leave to amend the complaint and add as defendants the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the United States, various federal officials or their estates, the City of Chicago, and Cook County. For reasons discussed below, the plaintiffs' motion is granted in part and denied in part. Plaintiffs are given leave to add all defendants proposed in this amendment except the United States, the FBI and the DOJ.

In addition, we find that the amendment as proposed by plaintiffs is not in compliance with Rules 8(a) and 8(e)(1) of the Federal Rules of Civil Procedure. We therefore require that plaintiffs present a new amendment in accordance with this opinion.

## DISCUSSION

We shall address separately the issues raised by the proposed joinder of each distinct group of defendants: the local government bodies, the individual federal officials or their estates, and the federal government and federal agencies.

### 1. Local Governments—Section 1983

■ Plaintiffs seek to rejoin the City of Chicago and Cook County as defendants in this action under 42 U.S.C. § 1983. Although plaintiffs named these parties as defendants in the original complaint filed in 1970, the City and County were dismissed in 1972, and again in 1975 from an amended complaint, under the rule in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that municipalities were not "persons" subject to suit under

§ 1983. The Seventh Circuit affirmed the 1972 dismissal in *Hampton I*, 484 F.2d 602 (1973), and plaintiffs did not raise this issue on the second appeal in 1977 since *Monroe* was still good law. Defendants now argue that plaintiffs' failure to appeal the 1975 dismissal constitutes a waiver of their cause of action against these defendants, notwithstanding the Supreme Court's overruling of this portion of *Monroe v. Pape* in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We hold that plaintiffs' failure to appeal the 1975 dismissal does not bar them from now rejoining these parties as defendants in light of *Monell.* We are unwilling to penalize plaintiffs for not anticipating *Monell.*[1] *See Burt v. Abel*, 585 F.2d 613, 617 (4th Cir. 1978).

The significant issues raised by plaintiffs' attempt to join these parties at this stage of the proceedings is whether the expiration of the five year statute of limitations bars plaintiffs from asserting their cause of action against these defendants. We note at the outset that the statute of limitations problem exists only with regard to plaintiffs' suit against the proposed defendants for injuries resulting from the "first" conspiracy described by the Seventh Circuit—the planning and carrying out of the raid. *Hampton II*, 600 F.2d 600, 621–22 (1979). The Seventh Circuit found that plaintiffs had made a prima facie case of a "second" conspiracy—the post-raid legal harassment of the plaintiffs, the coverup of evidence at the first trial, and the concealment of the first conspiracy. In addition, we believe plaintiffs allege an overall "continuing" conspiracy which spans both the raid and the alleged coverup and exists to this day.

■ The statutory period for filing a civil rights action is five years from the date the action accrues. *Beard v. Robinson*, 563 F.2d 331 (7th Cir. 1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149

---

1. We do not address the question of whether the plaintiffs' proposed amended complaint alleges liability of the City and County on a

*respondeat superior* theory. This issue is more properly addressed on a motion to dismiss.

(1978).[2]  Where the conspiracy is "continuous" the limitations period does not begin to run until the final overt act causing injury is completed.  Where the conspiracy has been concealed, the cause of action does not accrue and the limitations period does not begin to run until the date plaintiffs discover—or should have discovered—the evidence which establishes the conspiracy and links the defendants to the plaintiffs' injury.  *Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C.Cir.1979); *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C.Cir.1977).  The conspiracy to cover up evidence at the first trial can be said to have ended at the earliest with the close of the trial in 1977; therefore, plaintiffs would have until 1982 to join all defendants to claims for injuries resulting from the coverup.  The statute of limitations with regard to the City's and the County's complicity in the "continuing conspiracy" has not even begun to run, since there has been no final overt act which would signal the commencement of the limitations period.  Thus, the only issue remaining is whether the plaintiffs can join these parties as defendants for injuries sustained as a result of the "first" conspiracy—the planning and carrying out of the raid itself.

█ Rule 15 of the Federal Rules of Civil Procedure provides for liberal allowance of amendments in order to meet the "requirements of justice."  In cases where the plaintiff's amendment seeks to change the capacity or identity of the parties after the applicable limitation period has run, Rule 15(c) provides for relation back to the date of the original complaint if the amendment meets certain requirements:

(1) The claim against the proposed defendant must arise out of conduct set forth in the original pleading.

(2) The proposed defendant must have received such notice of the institution of the original action that it will not be prejudiced in maintaining its defense on the merits.

(3) The proposed defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]."

█ In applying Rule 15(c), as a whole, "courts have generally examined the facts of the case to ascertain whether the allowance of such amendment would be inconsistent with the notice requirements inherent in such limitation."  3 Moore's Federal Practice, ¶ 15.15[4.–1] p. 15–211–12.  The rule is to be liberally construed.  *DeMalherbe v. International Union of Elevator Constructors*, 449 F.Supp. 1335, 1354 (N.D. Cal.1978).  In cases where plaintiffs have been allowed to add another defendant, courts have looked for an extremely close relationship between the original and added defendant, and lack of prejudice to the added defendant.  In addition, courts consider the original intention of plaintiff, and whether plaintiff has a justification for failing to name the proper party initially.  *See* cases cited in Moore's, *supra*, at ¶ 15.-08[5], pp. 15–121–23, text accompanying notes 19–21.

It is clear that the claims against the City and County arise from the same conduct alleged against all defendants in the original proceeding.  Thus, Rule 15(c)(1) is satisfied.

It is also clear that the City and County, which were named as defendants in the original proceeding and which plaintiffs tried to join in 1975, had ample notice of the institution of this action.  *Compare Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 103 (1st Cir. 1979) (proposed defendant

---

2.  Defendants err in citing *Beard v. Robinson, supra*, for the proposition that the applicable statute of limitations is Ill.Rev.Stat. ch. 85, § 8–101, which provides a two-year limitations period.  Although the court in *Beard* agreed that Illinois law provides the statute of limitations for civil actions brought under the federal civil rights statutes, the borrowed limitations period is to be consistent with policies underlying federal rights of action.  The court held that these claims are not common law torts and are governed by the five year Illinois statute of limitations applicable to "civil actions not otherwise provided for."  *See* Ill.Rev.Stat. ch. 83, § 16.

had no notice of the institution of the action and no "identity of interest" with other defendants that would have served as constructive notice).

In examining what is perhaps the most important requirement of Rule 15(c), we believe there will be no unfair prejudice to the City or County in requiring them to defend on the merits at this stage of the case. This is because of the close "identity of interest" the proposed defendants have with the original defendants to this action (many of whom are officers and officials of the City and County), and the obvious involvement of the City and County with this case from its inception. For example, plaintiffs allege that the City is paying the cost of the defense for its officials. *Compare Craig v. United States*, 413 F.2d 854 (9th Cir. 1969), *cert. denied*, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (proposed defendant had no opportunity to investigate plaintiff's claim before expiration of the limitations period). *See also Longbottom v. Swaby*, 397 F.2d 45, 48 (5th Cir. 1967): "The purpose of [Rule 15(c)] is accomplished if the initial complaint gives the defendants fair notice that the litigation is arising out of a specific factual situation."

■ For similar reasons, we find that Rule 15(c)(3) does not present a bar to the relation back of this amendment, notwithstanding the fact that plaintiffs' failure to join the City and County within the limitations period was not due to "mistaken identity." Like other provisions of the rule, this third requirement should be read in light of the overall purposes of the rule and is not necessarily limited to cases of "misnomer." Moore's, *supra* at ¶ 15.15[4.–2] at p. 15–230 n. 14 and cases cited therein; *Taliferro v. Costello*, 467 F.Supp. 33, 35 (E.D.Pa.1979); *Williams v. Avis Transport of Canada, Ltd.*, 57 F.R.D. 53 (D.Nev.1972).[3] While we recognize that plaintiffs here seek to take advantage of a favorable change in the law that occurred after the lapse of the limitations period, we agree with Judge Pollak in *Taliferro* that they may be permitted to do this under Rule 15(c), particularly since the law changed during the pendency of this action, and, had plaintiffs appealed the issue, the Seventh Circuit would have reversed Judge Perry's denial of leave to add the City and County in light of *Monell*. If the notice requirements are properly met, there is no unfair prejudice to the proposed defendant, and the delay in joinder is not due to inexcusable neglect by the plaintiffs, it should make no difference whether the amendment to be related back corrects a mistake of fact or of law. *See e. g., Crowder v. Gordons Transports, Inc.*, 387 F.2d 413 (8th Cir. 1967); *Williams v. Avis.*[4]

**3.** We recognize that some courts have held that Rule 15(c) does not permit the substitution or addition of *new* parties. *See Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (10th Cir. 1973). As discussed *infra* at text accompanying notes 3 and 4, we do not find the City and County to be "new parties" as that phrase has been interpreted by the majority of courts applying Rule 15(c). Nor do we find that the Tenth Circuit has adamantly opposed the joinder of an additional party under 15(c), where a sufficient identity of interest with the old parties exists. *Compare Travelers Indemnity Co. v. United States ex rel. Construction Specialties Co.*, 382 F.2d 103, 106 (10th Cir. 1967): "[T]he purpose of the Federal Rules [is not] furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced. The ends of justice are not served when forfeiture of just claims because of technical rules is allowed."

**4.** In *Storey v. Garrett Corporation*, 43 F.R.D. 301 (C.D.Cal.1967), the plaintiffs attempted to join a party who had been absolutely immune when the suit was originally filed and throughout the limitations period. After the limitations period had run, the United States Supreme Court, in an unrelated case on the same statute, held that defendants such as the defendant proposed in *Storey* were not immune from suit. The *Storey* court refused to allow joinder of the proposed defendant, stating that the Supreme Court could not revive a cause of action against a party when the statute of limitations had run. "It has long been recognized that the 'relation back' doctrine does not enable a plaintiff to join *entirely new parties* as defendants after the statute of limitations has run." (Emphasis supplied). 43 F.R.D. at 304.

That case is distinguishable from the present case primarily because, unlike the *Storey* court, we do not find the City and the County to be "entirely new parties." The *Storey* court emphasized that the relation back doctrine would not bar the joinder of parties who were not "entirely new" to the litigation; however, the

Finally, plaintiffs' failure to join these parties earlier is not due to inexcusable neglect. Plaintiffs had attempted to join these parties with no success more than once during the limitations period, and as discussed herein we find their failure to appeal the 1975 denial to be justified.

■ The purpose of the relation back rule is to ensure that the statute of limitations is not used mechanically to prevent adjudication of claims where a real party in interest was sufficiently alerted to the proceedings, or was involved in them in a practical sense from an early stage. In addition to the adequacy of notice to the proposed defendants, and the identity of interest they share with many of the defendants already named in this case, many factors lead us to the conclusion that the "ends of justice" would not be served if we denied plaintiffs leave to join these parties. First, plaintiffs' failure to appeal in 1977 is clearly excusable. In fact, it seems that such an appeal, in light of *Monroe* and *Hampton I*, would have been frivolous. Second, any prejudice to the proposed defendants is lessened by the posture of this case on remand; the Seventh Circuit has ordered not only a new trial but extensive new discovery. Thus, these defendants formally enter this case on almost the same footing as the other defendants who have been parties since 1970, especially in light of their continuous informal participation. Finally, we agree with Judge Pollak in *Taliferro* that notwithstanding the rule of *Monroe v. Pape*, the municipality and the county could have anticipated their joinder during the limitations period on other jurisdictional

bases. 467 F.Supp. at 36. *See also Crowder v. Gordons Transports, supra*. As noted in note 4, *supra*, lack of prejudice to the defendants may be dispositive in "close" cases. We find this to be one of those cases.

### 2. Federal Defendants

#### (A) Individual Federal Officials, or Their Estates

Plaintiffs seek to join a number of former officials of the FBI and DOJ, or their estates. The objections raised by the proposed defendants relate primarily to the statute of limitations.

For a number of reasons, including those discussed at pp. 142–145, *supra*, we find that the statute of limitations does not bar joinder of these defendants. In particular, we find that plaintiffs' have moved to join *these* defendants within five years of the time they discovered their involvement in the alleged conspiracies. Plaintiffs allege that they first discovered evidence of the previously concealed participation by the federal defendants in the alleged conspiracies in the spring of 1974; by November 1975 plaintiffs had sufficient evidence to link these defendants to the plaintiffs' injuries. They filed a motion to amend the complaint which was denied without prejudice by Judge Perry on the eve of trial, January 6, 1976. *See* Appendix C to Plaintiffs' Brief in Reply to Defendants' Opposition to this Motion (Transcript, Jan. 6, 1976) ("Plaintiffs' Brief"). This renewed motion for amendment was filed in September 1980 and thus comes within the five years after November 1975.

proposed defendant in that case could not have anticipated his joinder during the limitations period, had little or no identity of interest with the other defendants, and had not participated in the case at all. Neither the notice nor the lack of prejudice requirements of Rule 15(c) were met.

This is obviously different from the facts in the present case, as discussed *supra* at pp. 142–145. Even if the *Hampton* plaintiffs were attempting to assert a cause of action against defendants that did not arise until after the limitations period had run, this factor would be outweighed by the close involvement of the City and County in this case throughout its

history, the lack of unfair prejudice in their joinder, and, in particular, plaintiffs' several efforts to join them earlier. *Compare Russ v. Ratliff*, 578 F.2d 221, 224 (8th Cir. 1978), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 614, 58 L.Ed.2d 679. "[I]n cases where . . . there is some doubt as to whether the cause is clearly barred, the rule should be liberally construed [. . .] and especially is this so where the defendant is put to no disadvantage." *Humphries v. Going*, 59 F.R.D. 583, 587 (E.D.N.C.1973), *DeMalherbe*, 449 F.Supp. at 1353, and cases cited therein. This "close question" is clearly left to the sound judgment of the district court. *Russ, supra*, and cases cited therein.

■ We note that even if the limitations period commenced with the plaintiffs' first discovery of evidence in the spring of 1974, we would hold that since the denial in 1976 of the motion to amend and join these defendants was without prejudice, that motion is subject to renewal and was sufficient to toll the statute of limitations. We will therefore permit the plaintiffs to join the proposed individual federal defendants.[5]

There are two methods for proceeding against individual federal officials for violations of a plaintiff's constitutional rights. First, if the federal officials acted in complicity with the state officials, and the injury to the plaintiffs was perpetrated under color of state law, the federal officials are subject to suit under 42 U.S.C. § 1983. *Hampton II*, 600 F.2d at 623. Second, if the conduct of the federal officials was independent of the state actors, and was in violation of the Constitution, plaintiffs may bring an action based directly upon the section of the Constitution violated by the federal defendants. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ These causes of action do not overlap. To the extent that the allegedly illegal actions of the federal officials were carried out under color of state law, § 1983 provides an adequate and exclusive remedy. Where an adequate statutory remedy exists, there is no need to imply the existence of a constitutional cause of action. *See Neely v. Blumenthal*, 458 F.Supp. 945 (D.D.C.1978). *See also Thedford v. Joyce*, No. 79 C 3061, Slip Op. at 6 (N.D.Ill. June 8, 1980), and cases cited therein. However, since § 1983 does not apply to those actions of the federal officials which were not done in complicity with the state officials, plaintiffs may assert a *Bivens* action against the federal defendants for any conduct which does not fall within the ambit of the statutory remedy.

Although the facts asserted in the proposed amendment clearly allege that the federal officials participated in a violation of the plaintiffs' constitutional rights, plaintiffs fail to specify the particular jurisdictional base for their cause of action. It is difficult to discern from this rambling, conclusory and narrative amendment precisely what if any of the conduct of the federal officials is alleged to have been independent of the state actors, and what if any of their conduct was done in complicity with the state actors. Although we would guess from the earlier proceedings in this case that plaintiffs allege that all the injurious conduct of the federal officials was done in complicity with the state actors, and therefore § 1983 will be the exclusive basis for our jurisdiction over these federal defendants, plaintiffs should redraft their amendment, stating specifically the grounds for this court's jurisdiction and the conduct which gives rise to this jurisdiction in light of the above discussion. *See* p. 150 *infra*.

*(B) FBI, DOJ and the United States*

Plaintiffs seek to join certain federal agencies and the United States as defendants in this action. For reasons discussed *supra* at pp. 143–145 and pp. 145–146, the statute of limitations presents no bar to the joinder of these parties. However, we hold that sovereign immunity bars this court from asserting any jurisdiction over these parties and accordingly deny plaintiffs leave to join the FBI, the DOJ and the United States as defendants.

■ We note at the outset that despite plaintiffs' argument to the contrary, a suit against a federal agency for money

---

5. We recognize that there may be different statute of limitations problems with regard to the joinder of the Estates of Clyde Tolson on behalf of J. Edgar Hoover, and of William Sullivan. We shall allow joinder of these estates, since we believe that the limitations problems would be more easily dealt with on a motion to dismiss filed by defendants. We note, however, that for the reasons discussed in the text accompanying this note, *supra*, the proper date for any initial determination of whether the appropriate statute of limitations has been tolled would be *the date of the filing of plaintiffs' initial motion to join these estates*, which seems to have been the motion denied without prejudice by Judge Perry in January 1976.

damages is tantamount to an action against the United States itself, since any damages would be paid from the Treasury of the United States. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); 1 Moore's Federal Practice, ¶ 0.65[2–1] at p. 700.94. *Compare Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Just as the United States cannot be sued *eo nomine* without its express consent, the unincorporated departments and agencies of the federal government cannot be sued *eo nomine* unless Congress has explicitly or impliedly denominated the agency as amenable to such suits. *Blackmar v. Guerre,* 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1951); *Benima v. Smithsonian Institution,* 471 F.Supp. 62, 66–67 (D.Mass.1979); Moore's, *supra,* at pp. 700.87–.88.

Although plaintiffs do not specify any specific basis for this court's jurisdiction in their proposed amendment, a reading of Plaintiffs' Brief at p. 2 n. "* *" reveals that their claims are brought directly under the Constitution, and pursuant to 42 U.S.C. § 1981 et seq., against the FBI and DOJ.

*(1) Section 1983*

■ In support of their argument for jurisdiction over the United States under § 1983, plaintiffs argue that the policy underlying the Supreme Court's decision to subject municipalities to suit under § 1983 in *Monell* and *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), justifies waiving the sovereign immunity of the United States in this action, particularly since the federal government acted in complicity with the City.

The Supreme Court's decision to deny the immunity from suit under § 1983 formerly enjoyed by municipalities under *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), was based upon a close reexamination of the legislative history of the Civil Rights Act of 1871 and recognition that *municipalities* have never enjoyed immunity of the scope to which states are entitled under the Eleventh Amendment. The

Court found that Congress had intended that municipalities be considered "persons" for the purposes of § 1983; the issue in *Monell* was not whether the protections afforded citizens under § 1983 should take precedence over sovereign immunity. The holding in *Monell* was "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. at 690 n.54, 98 S.Ct. at 2035. The limited scope of *Monell* was later recognized in *Quern v. Jordan,* 440 U.S. 332, 338–40, 99 S.Ct. 1139, 1143–1144, 59 L.Ed.2d 358 (1979), where the Court held that states and state agencies are immune from suit under § 1983.

The reasoning in *Quern* is directly analogous to the question of federal immunity presented in this case. *Quern* cites with approval the decision in *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951), that Congress did not intend to infringe upon the sovereign immunity of either the federal or the state governments when passing the Civil Rights Act of 1871. 440 U.S. at 340–45, 99 S.Ct. at 1144–1147. *Compare* 42 U.S.C. § 2000e–2 et seq. (Title VII of the Civil Rights Act of 1964), where Congress expressly held states amenable to suit for employment discrimination. As stated in *Tenney* and *Quern* there is absolutely no evidence in the legislative history that Congress intended to overrule the sovereign immunity of the federal government when § 1983 was passed. Not only are plaintiffs unable to cite any case in which the United States has been sued under § 1983 even where there has been complicity with state actors, but plaintiffs cite no case, and we find none, in which *Monell* has been extended to governmental bodies other than local governments. We thus reject plaintiffs' argument that we have jurisdiction over the United States under § 1983 on the basis of *Monell* and *Owen.*

*(2) The Constitution*

■ Plaintiffs next argue that jurisdiction can be asserted over the United States under the substantive provisions of the Con-

stitution itself.[6] They argue that the violation of any constitutional provision by the federal government automatically creates a cause of action against the United States; if this were not so, the victim would have a right without a remedy. Therefore, plaintiffs conclude that violations of the Fourth or Fifth Amendments are sufficient in themselves to confer jurisdiction upon this court over the federal government.

Although this theory has been accepted by the Supreme Court where plaintiffs have sought money damages from federal *agents* sued as individuals for violations of a plaintiff's Fourth Amendment constitutional rights, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), this argument has been rejected when the defendant named in the suit or the real party in interest was a federal agency or the United States itself. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

The United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). In *Testan,* the Court held that, "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and *we regard as unsound the argument . . . that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation.*"

(Emphasis supplied). 424 U.S. at 400–01, 96 S.Ct. at 954.

Plaintiffs cite *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948), *Wounded Knee Defense/Offense Committee v. FBI,* 507 F.2d 1281 (8th Cir. 1974), and *Schlafly v. Volpe,* 495 F.2d 273 (7th Cir. 1974), as examples of cases in which courts have entertained suits against the sovereign. However, these cases do not stand for the proposition that district courts have jurisdiction over claims for money damages when the sovereign has not consented to suit.

In *Larson,* the Court held that when a suit brought against a federal official seeks relief which would involve the disposition of the property of the United States, the real party defendant in interest is the United States. Sovereign immunity bars such suits unless (1) the conduct of the federal official was *ultra vires* his authority and therefore not the act of the sovereign, and these actions are the object of specific relief; or (2) the statute or order conferring power upon the federal official is claimed to be unconstitutional. The Court immediately qualified this holding in what has been termed the "famous and debatable footnote 11:" [7]

> Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief . . . will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

337 U.S. at 691 n. 11, 69 S.Ct. at 1462.

The Seventh Circuit tackled the job of interpreting this footnote in *Schlafly v.*

---

**6.** Although the proposed amendment does not identify the specific provisions of the Constitution that plaintiffs' allege to have been violated, a close reading of the Plaintiffs' Brief and of their Amendment indicates that plaintiffs appear to allege violations of at least their Fourth and Fifth Amendment rights. As discussed, *infra* p. 148, the Fourth Amendment does not create a cause of action against the United States or its agencies for money damages. Similarly, the Fifth Amendment has specifically been held to not create such a cause of action; the guarantees of the amendment do not override the sovereign immunity of the United

States. *DeLao v. Califano,* 560 F.2d 1384 (8th Cir. 1977); *Pflueger v. United States,* 121 F.2d 732 (D.C.Cir.1941), *cert. denied,* 314 U.S. 617; *Benima v. Smithsonian Institution,* 471 F.Supp. 62 (D.Mass.1979).

We note that it is the general difficulty in assessing the court's jurisdiction with regard to all claims in this amendment that leads us to the conclusion that the amendment is not in compliance with Federal Rules of Civil Procedure 8(a) and 8(e)(1). *See* p. 150 *infra.*

**7.** *Schlafly,* 495 F.2d at 278.

*Volpe.* The *Schlafly* plaintiffs sought to "unfreeze" federal funds that had been earmarked by Congress for certain highway construction projects in Illinois but had been suspended by the Federal Highway Administrator. The Seventh Circuit relied upon the interpretation of *Larson* footnote 11 found in *State of Washington v. Udall,* 417 F.2d 1310, 1318 (9th Cir. 1969),[8] where the court held that footnote 11 "envisioned the possibility of applying the doctrine of sovereign immunity, even through the official's alleged conduct is *ultra vires,* where 'the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm.' 417 F.2d at 1318." 495 F.2d at 280. After finding that the Federal Highway Administrator's conduct was *ultra vires,* the Seventh Circuit applied this "weighing" test to the facts in *Schlafly.* The court found that the monetary relief requested was not damages, but was instead the expenditure of funds which had already been authorized and appropriated by Congress to the State of Illinois, had been earlier approved by the Secretary of Transportation, and was owed to the state as a contractual obligation. 495 F.2d at 280. Since ordering the release of such funds would not work any hardship upon the operations of the federal government, which had already accounted for their expenditure, sovereign immunity would not bar the suit. *Id. See also State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1123 (8th Cir. 1973).

Although the conduct of the federal officials in the instant case is also alleged to have been *ultra vires,* the expenditure of funds requested by the *Hampton* plaintiffs is quite different from that in *Schlafly.* Imposition of liability for money damages upon the United States would require the expenditure of funds which have not been otherwise authorized by Congress, or previously accounted for in the Treasury. Ordering the release of funds for damage payments therefore more clearly works an intolerable burden upon the operations of the government than did the funds release in *Schlafly. See Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Testan; DeLao v. Califano,* 560 F.2d 1384, 1391 (9th Cir. 1977).[9]

Nor does *Wounded Knee* provide a basis for this court's jurisdiction to award money damages against the United States absent consent to suit. The court in *Wounded Knee* asserted jurisdiction over the FBI pursuant to a *Bivens*-type analysis, but the relief sought was an injunction, which the court distinguished from money damages. 507 F.2d at 1284.[10]

---

**8.** In *Washington v. Udall,* the State of Washington sought to obtain judicial review of an administrative decision by the Secretary of the Interior that Washington was not entitled to the delivery of water from the Columbia Basin Project to more than 160 acres of certain state-owned land.

**9.** We note that the suit in *Schlafly* was brought against a federal official, not directly against the United States or a federal agency. The *Hampton* plaintiffs seek to sue the United States and its agencies directly, in addition to suing the federal officials as individuals. While the identity of the defendant named in the complaint is obviously not dispositive of the sovereign immunity question, the difference in defendants chosen to be named in these two cases is indicative of the difference in the relief sought by the two sets of plaintiffs. The relief sought in *Schlafly* was a change in the specific conduct of the federal official sued; if the conduct complained of was found to be *ultra vires* and unconstitutional, the relief sought was in the nature of a mandamus action ordering the official to comply with his statutory duty. In that case, the mandate of the official was to disburse funds already appropriated by Congress. In contrast, the *Hampton* plaintiffs do not seek a change in the specific conduct of federal officials; rather, they seek to cure past injuries resulting from the unconstitutional conduct of these officials, acting as agents of the United States, by means of general monetary damages. Although the specific conduct of the officials creates the cause of action, this conduct is not the object of "specific relief" as is required by *Larson* and as it was in *Schlafly* and *Wounded Knee.*

**10.** Nor was the injunctive relief requested in *Wounded Knee* "affirmative action by the government" which would be an intolerable burden upon the operations of the government of the United States; plaintiffs requested an injunction to prevent the FBI from harassing or intimidating its members, or from otherwise interfering with their activities.

We therefore hold that the alleged violations of substantive provisions of the Constitution by the United States or its agencies is not sufficient to confer jurisdiction upon this court to award money damages against the sovereign. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*; 2679 provides the exclusive vehicle for such suits against the United States.

Plaintiffs seek to join the United States under the FTCA for total damages of $71,700,000.00. *See* Plaintiffs' Amendment, p. 14. However, the FTCA provides for an administrative remedy which must be exhausted before this court or the Court of Claims can assert jurisdiction. 28 U.S.C. § 2675(a). There is no allegation or evidence that plaintiffs have ever pursued their administrative remedies under the FTCA.

For reasons discussed above, we find that plaintiffs have alleged no basis sufficient to confer jurisdiction upon this court to award money damages against the United States, the FBI or the DOJ. Plaintiffs are denied leave to join these parties as defendants.

*3. Federal Rules Civil Procedure 8(a), 8(e)(1)*

Rules 8(a) and 8(e)(1) require that plaintiffs' complaint be "short and plain," and "simple, concise and direct." Plaintiffs must include a statement of the grounds upon which the court's jurisdiction depends.

██ The amended complaint proposed by plaintiffs does not comply with Rule 8. It fails to include the basis for this court's jurisdiction over any particular defendant on any specific cause of action. It fails to distinguish the various causes of action, and the specific facts that gave rise to each. Instead, it is a lengthy and confusing narrative, replete with characterizations, conclusions and personalities.

Plaintiffs should redraft this proposed amendment, keeping in mind the requirements and purposes of Rule 8. A complaint is not meant to persuade the court but to place the matter before the court in as clear a manner as possible. Persuasion is for the trial; the jury will not see the pleadings. Plaintiffs should keep in mind that jury instructions are facilitated when the court is able to refer to the elements which must be proved under the various counts of the complaint. Plaintiffs should plead each cause of action in a separate count, identifying for each count the basis of the court's jurisdiction, the defendants, and concisely presenting the facts which give rise to the claim against each defendant. In redrafting the amended complaint, plaintiffs must also, of course, comply with the rulings made in this opinion, *See e. g.,* pp. 146–147 *supra.*

For the reasons discussed above, plaintiffs are granted leave to join as defendants to this action the City of Chicago, the County of Cook, the Estate of Clyde Tolson on behalf of J. Edgar Hoover, the Estate of William Sullivan, George Moore, John Mitchell, and Jerris Leonard. Plaintiffs are denied leave to join as defendants to this action the United States of America, the Federal Bureau of Investigation, and the Department of Justice.

Plaintiffs are given until September 8, 1981, to present a new amendment to the complaint in accordance with p. 150 of this opinion. If the amendment complies with the requirements of this opinion, we will permit it to be filed.