PHYLLISA A. FARNOR, Plaintiff-Appellee and Cross-Appellant, v. IRMCO CORPORATION et al., Defendants-Appellants and Cross-Appellees.

First District (3rd Division)   Nos. 77-1896, 78-542 cons.

Opinion filed June 27, 1979.—Rehearing denied August 2, 1979.

Kennedy, Golan, Morris, Spangler & Greenberg, of Chicago (Erwin H. Greenberg, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Cornelius P. Callahan, Norman J. Lerum, and Hugh C. Griffin, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Phyllisa Farnor, brought this action against defendants, Irmco Corporation and L. S. Cineski, seeking damages for defendants' alleged intentional infliction of mental distress upon her. The suit arose out of defendants' refusal to allow plaintiff to move her furniture out of an apartment in the Belmont Hotel unless she paid rent. After a trial without a jury, the trial court entered judgment for plaintiff against Cineski in the amount of $5,000 and a judgment against Irmco in the amount of $10,000. The following evidence was adduced at trial.

In the summer of 1972, plaintiff, aged 25, was employed as an Amtrak Passenger Service Representative and was transferred to Chicago. In seeking a place to live, she visited the Belmont Hotel, which was managed by Irmco. Plaintiff was shown apartments in the hotel by Mrs. Mildred Glass, an Irmco employee and assistant manager of the hotel. Glass told plaintiff that if she was transferred out of Chicago before expiration of the lease, she could terminate the lease by giving two months' notice, paying one month's rent and forfeiting her security deposit. On July 20, 1972, plaintiff executed a two-year lease expiring September 30, 1974, for an unfurnished apartment at $225 per month. The lease was signed by plaintiff, by Glass and by defendant Cineski, manager of the hotel. The oral agreement with Glass was not incorporated into the lease. The lease provided that if plaintiff vacated the premises before expiration of the lease, the lessor had the right to relet the premises and hold plaintiff liable for any deficiency at the end of the term.

In June 1973, plaintiff was informed she was being transferred to Los Angeles. At that time, Glass informed plaintiff that in order to terminate the lease she would have to pay three months' rent and forfeit her security deposit.

When plaintiff paid her August rent, she told Glass she would be moving on September 14, 1973. She submitted a written request for use of the freight elevator on that day. On September 13, packers from the moving company arrived to pack plaintiff's belongings. Plaintiff telephoned Cineski to verify the availability of the freight elevator. Cineski replied that plaintiff would not be permitted to use the elevator until she paid what she owed the hotel. When plaintiff mentioned the oral agreement with Glass, Cineski stated that he did not "give a good goddamn what she [Glass] said," and "there are rules and to hell with anything else." He told plaintiff that she was "never going to get the goddamn stuff out of the apartment" unless she paid three months' rent and forfeited her security deposit. Cineski then hung up. Plaintiff called back immediately, but Cineski refused to discuss the matter and told her to set up an appointment with his secretary.

The movers arrived on the morning of September 14. Cartons, boxes, suitcases and furniture were moved out into the hallway near the freight elevator. An unidentified man told the movers he had orders that they were not permitted to use the freight elevator.

In response to a telephone call, an Amtrak representative gave plaintiff the name of an attorney. The attorney met with Cineski at the hotel, but the latter still refused plaintiff the use of the freight elevator.

During the afternoon, Cineski telephoned plaintiff and told her to remove her "goddamn" furniture from the hallway immediately or it would be confiscated. Plaintiff attempted to move the items back into the

apartment herself. Upon seeing her crying and distraught, the movers helped until all her belongings were removed from the hallway. The movers left at 3 p.m.

Late in the afternoon, plaintiff's attorney obtained an injunction prohibiting defendants from denying plaintiff use of the freight elevator. The movers, however, had gone and could not return until September 19.

Plaintiff remained in her apartment that evening. She testified that she was extremely nervous and emotionally distraught. She feared that, in addition to losing all her possessions, she would be compelled to pay three months' rent and forfeit her security deposit. As she rested in her bedroom, she heard someone in her apartment. When she arose, she saw only the door close. The door locks automatically when it is closed and can be opened only with a pass key.

Plaintiff left the hotel the following morning and flew to California. She reported to work aboard a train the next day and worked four consecutive days. She performed her duties satisfactorily and lost no time from work. Plaintiff testified that during this time period she was nervous and that a pre-existing ulcerous condition was aggravated. Within two weeks after the incident, plaintiff made a long-distance call to a physician in Maryland concerning her ulcer. She sought no other medical treatment. Plaintiff's furniture was removed from the hotel without incident on September 19 and it arrived in California approximately three days later.

Defendants' motion for judgment at the close of plaintiff's case was denied. Defendants thereupon rested without presenting evidence. The trial court found defendants liable for the intentional infliction of emotional distress upon plaintiff, and entered judgments as we have noted. Irmco was awarded a set-off of $647.86 on its counterclaim for the amount due from plaintiff under the lease. The trial court denied plaintiff's motion to correct the judgments to reflect a single judgment of $15,000 against Irmco and Cineski jointly and severally. The court also denied her claim for attorney's fees. The trial court refused to rule on plaintiff's petition to recover costs and fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) for disproving allegedly false statements made by defendants in their pleadings.

Defendants contend that the trial court erred in finding them guilty of the intentional infliction of emotional distress. They maintain that, as a matter of fact and law, the evidence adduced failed to support the trial court's judgment.

■■ The following elements are essential to sustain a cause of action for intentional infliction of mental distress: extreme and outrageous conduct by the defendant; intent by the defendant to cause, or a reckless disregard of the probability of causing emotional distress; severe or extreme emotional distress suffered by the plaintiff; and an actual and proximate

causation of emotional distress by the defendant's outrageous conduct. (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373; *Eckenrode v. Life of America Insurance Co.* (7th Cir. 1972), 470 F.2d 1.) At issue in the present case is whether Cineski's conduct was extreme and outrageous and whether plaintiff suffered severe or extreme emotional distress.

We must first decide whether Cineski's conduct will support a cause of action for the tort of intentional infliction of emotional distress.

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *." (Restatement (Second) of Torts §46, comment d (1965).) Whether certain conduct can be characterized as extreme and outrageous necessarily depends on the facts of each case. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) A general concept of the type of conduct emerges, however, from those relatively few cases in this state which have upheld the cause of action.

In *Knierim*, the first case to recognize the tort of intentional infliction of emotional distress, plaintiff alleged that defendant threatened to and did kill her husband. In holding that plaintiff's complaint stated a cause of action, the supreme court noted that an objective standard must be used. Thus, the question is whether the conduct complained of would cause severe emotional distress to a person of ordinary sensibilities. In *Eckenrode*, the complaint was held to state a cause of action where it alleged that the defendant insurance company refused to make payments under an accidental death policy. Defendant's refusal to pay was based upon a bad-faith insistence on a nonexistent defense. The court recognized that refusal to pay, under circumstances where plaintiff's need for the proceeds was great and defendant's duty to pay was clear, could constitute extreme and outrageous conduct. More recently in *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37, defendant's counterclaim alleged that plaintiff, in an attempt to collect a debt, made a series of 15 harassing phone calls to defendant, to her parents, and to her place of employment, thus jeopardizing her job. In holding that the counterclaim stated a cause of action, this court stated at page 1008: "We cannot hold, as a matter of law, that the allegations contained in Count I of the counterclaim allege trivial hurts to which Scott has neurotically overreacted, or that what has been pleaded is a slight hurt which one must endure in a complex society."

■■ In comparison to the foregoing facts, we believe the conduct in the present case falls short of the extreme and outrageous conduct necessary to sustain a cause of action for the intentional infliction of emotional distress. The conduct complained of consisted of three brief telephone conversations between plaintiff and Cineski during which the latter told

plaintiff in rather forceful terms that she would not be permitted to use the freight elevator unless she paid rent for three months and forfeited her security deposit. Cineski also threatened to confiscate plaintiff's furniture if it was not removed from the hallway. Cineski used the word "goddamn" several times, but plaintiff testified that she was used to more offensive expressions in her dealings with Amtrak passengers. Plaintiff was concerned with her possessions, not with her safety. Moreover, the duration of the incident was relatively brief. Plaintiff first spoke to Cineski on September 13. On the following day, an injunction had issued prohibiting defendants from denying plaintiff the use of the freight elevator. We do not mean to imply that Cineski's conduct should be condoned. Nevertheless, though it most certainly was offensive to plaintiff, we do not believe it rises above the category of "slight hurts which are the price of a complex society." *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 85, 174 N.E.2d 157.

Plaintiff stresses that defendants had no legal right to detain her property. The sole provision in the lease relating to vacation of the premises before expiration of the term provided that the lessor could relet the premises and hold the lessee liable for any deficiency at the end of the term. Plaintiff contends, therefore, that defendants were wholly without justification in refusing plaintiff the use of the freight elevator and were properly found guilty of abuse of their position of apparent power over plaintiff.

A finding that certain conduct is extreme and outrageous may arise from abuse by the defendant of a position or relation, such as landlord-tenant, which gives him actual or apparent authority to adversely affect the plaintiff's interests. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.) Yet, the existence of the relationship, standing alone, does not relieve plaintiff of the burden of proving the extreme and outrageous nature of defendant's conduct. (Restatement (Second) of Torts §46, comment e (1965).) Conduct which otherwise amounts to no more than insults or indignities will not be deemed to be extreme and outrageous simply by virtue of some special relationship which exists between the parties. Cineski's conversations and refusal to allow plaintiff use of the freight elevator cannot be characterized as extreme and outrageous conduct.

Even were we to view defendants' conduct in fact as extreme and outrageous, we would have to hold that another element of the tort was absent. The emotional distress suffered by plaintiff was not severe. It is not enough that plaintiff experiences fright or worry. In order to be actionable, the distress must be of such intensity and duration that no reasonable person could be expected to endure it. (*Public Finance Corp. v. Davis*; Restatement (Second) of Torts §46, comment j (1965).) In the

present case, plaintiff stated that she wept constantly and was very distraught on September 14. Plaintiff left for California the following day, knowing that an injunction had been issued prohibiting defendant from refusing her use of the freight elevator. She reported for work on September 16 and worked for four consecutive days. While she was nervous and exhausted during this time and suffered the aggravation of a preexisting ulcer, she was able to perform her duties satisfactorily. The only medical attention she sought was a long-distance telephone call to her physician.

■■ It is beyond argument that plaintiff was upset, and justifiably so, by the events of September 13 and 14. The foregoing summary demonstrates, however, that the intensity and duration of her distress were not such as would warrant the imposition of liability upon defendants. We do not believe the distress which would be suffered by a person of ordinary sensibilities under the circumstances related above would be the severe upset sufficient to support a cause of action for the intentional infliction of emotional distress. (*March v. Cacioppo* (1962), 37 Ill. App. 2d 235, 185 N.E.2d 397.) Consequently, the trial court erred in denying defendants' motion for judgment and in entering judgments for plaintiff.

■■ Our disposition of this issue renders unnecessary any discussion of defendants' claim that if judgment should have been entered at all, it should have been entered against them jointly and severally in the amount of $5,000, the extent of Cineski's liability. We also need not consider plaintiff's contention that judgment should have been entered against defendants jointly and severally in the amount of $15,000. Since we are reversing the judgment in favor of plaintiff, her claim for attorney's fees based upon the successful judgment must also fall.

Two issues raised by plaintiff remain. She contends that the trial court erred in striking an amendment to the complaint adding allegations of unlawful distraint and trespass.

Plaintiff's original complaint seeking injunctive relief was filed September 14, 1973. A two-count amended complaint was filed September 20 which added a request for damages for the intentional infliction of emotional distress. Plaintiff's second amended complaint added an additional party. On October 1, 1974, plaintiff filed a third amended complaint omitting the request for an injunction and leaving only the count sounding in tort. On May 26, 1977, the day trial commenced, plaintiff filed a fourth amended complaint adding two counts: one alleging a trespass upon her apartment and the other alleging unlawful distraint of her property. The trial proceeded on the allegations of plaintiff's one-count third amended complaint. On July 5, 1977, at the conclusion of plaintiff's presentation of evidence and just prior to the receipt of evidence on Irmco's counterclaim, plaintiff filed a fifth

amended complaint containing essentially the same allegations as the fourth amended complaint. The trial court on its own motion struck the two counts charging trespass and unlawful distraint.

Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46) provides that amendments may be allowed before final judgment "on just and reasonable terms." The decision to grant or deny leave to amend is vested in the discretion of the trial court. (*Perry v. Cronin* (1978), 61 Ill. App. 3d 418, 377 N.E.2d 1321.) The court's discretion is broad and its decision will not be disturbed unless it clearly appears that there has been an abuse of discretion. *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022; *Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 331 N.E.2d 576.

■■ We believe the trial court properly struck the counts of plaintiff's fifth amended complaint alleging trespass and unlawful distraint of her property. Generally, it is not an abuse of discretion to deny a motion to amend on the eve of trial or during trial if the moving party seeks to set forth matters of which he must have had full knowledge at the time of the original pleading. (*Mayfair Construction Co. v. Security Insurance Co.* (1977), 51 Ill. App. 3d 588, 366 N.E.2d 1020; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.) Plaintiff had knowledge of all the facts and was represented by counsel from September 14, 1973. Defendants prepared and presented their case on the assumption that plaintiff's sole claim was for the intentional infliction of emotional distress. Under these circumstances, the trial court properly struck the counts seeking to add a new cause of action.

Plaintiff's final contention relates to the trial court's refusal to rule on her petition under section 41 of the Civil Practice Act to recover costs and attorney's fees incurred in disproving false statements made by defendants in their pleadings. (Ill. Rev. Stat. 1977, ch. 110, par. 41.) Plaintiff maintains that defendants, without reasonable cause, denied that Cineski was an employee of Irmco and denied that plaintiff was refused use of the freight elevator. An examination of the record reveals that a genuine dispute existed as to whether Cineski was an employee of Irmco or of the hotel. Defense counsel stipulated during trial that, for the purposes of trial, Cineski could be considered an employee of Irmco. That stipulation does not demonstrate that the prior denial was made in bad faith. Plaintiff maintains also that defendants' denial that plaintiff was refused use of the freight elevator was made falsely and without justification. Cineski always denied that he refused plaintiff use of the elevator, and other witnesses associated with Irmco testified that they had no personal knowledge of the incident. The trial court was called upon to assess the credibility of the witnesses. The fact that the issue was resolved

in plaintiff's favor is insufficient to warrant a conclusion that defendants acted in bad faith in denying plaintiff's allegations. The trial court properly refused to assess section 41 costs against defendants.

For the foregoing reasons, the judgment of the circuit court of Cook County in favor of plaintiff is reversed. The order striking the additional counts contained in plaintiff's fifth amended complaint is affirmed. The order denying section 41 costs to plaintiff is also affirmed.

Affirmed in part; reversed in part.

McGILLICUDDY and RIZZI, JJ., concur.