Adele DALE and Gary Dale, Plaintiffs,

v.

CITY OF CHICAGO HEIGHTS, a Municipal corporation; Charles Panici, individually and as agent of the City of Chicago Heights; Jack Cripe, individually and as agent of the City of Chicago Heights; John Hogensen, individually and as agent of the City of Chicago Heights; Enrico Doggett, individually and as agent of the City of Chicago Heights; and J.A. Melei, individually and as agent of the City of Chicago Heights, Defendants.

No. 87 C 489.

United States District Court, N.D. Illinois, E.D.

Oct. 27, 1987.

---

Robert S. Harlib, Grace E. Wein, Chicago, Ill., for plaintiffs.

Kai A. Nebel, James J. Casey, Keck, Mahin & Cate, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiffs Adele and Gary Dale claim that defendants City of Chicago Heights and four municipal officers violated the Civil Rights Act of 1866 and 1871, 42 U.S.C. §§ 1981, 1982, 1983, 1985(3) and state common law. This court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(1), (3), (4), and pendent jurisdiction. Defendants have moved to dismiss Counts I, II, VII, VIII, and IX of the complaint. For the reasons set forth below, this court will deny the motion for Counts I, II and VIII, but dismiss Counts VII and IX.

## DISCUSSION

Counts I and II

■ In Counts I and II, plaintiffs, a white couple, allege that defendants violated 42 U.S.C. §§ 1981 and 1982 through a pattern of conduct designed to punish the plaintiffs for, and interfere with, the rental of their property to black tenants. Specifically, defendants falsely reported to the Housing Authority of Cook County ("CCHA") that plaintiffs' property was in violation of the Chicago Heights building code; repeatedly declined to inform plaintiffs of the nature of the alleged violations; refused to approve plaintiffs' plans to rehabilitate their property; and, ultimately, declared plaintiffs' property "unfit for human habitation." As a result, the CCHA terminated plaintiffs' status as recipients of funds under § 8 of the United States Housing Act of 1937, and plaintiffs' black tenants were forced to terminate their leases.

Though inartfully pleaded, Counts I and II do set forth claims upon which relief may be granted. The gravaman of these claims is that defendants were motivated by racial animus toward plaintiffs' black tenants. The Supreme Court's decisions in *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), and *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), make clear that plaintiffs, though white, have standing to sue for harm engendered by this animus. *See also Weaver v. Gross*, 605 F.Supp. 210, 212 (D.C.D.C.1985) ("It has been held that whites can have standing to sue under § 1981 for discrimination they have suffered as the result of their activities with or on behalf of blacks.") (Citations omitted).

Defendants claim, however, that plaintiffs have failed to set forth facts demonstrating that landlords who rented to blacks were treated differently than land-

lords who rented to nonblacks. Absent such allegation of "disparate treatment," defendants argue, plaintiffs cannot state a claim under §§ 1981 and 1982.

It is true that in *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982), the Seventh Circuit indicated that the mere allegation that defendant acted "because of Plaintiff's race" was insufficient to state a claim under § 1981. It is also true, however, that the Seventh Circuit has specifically held that plaintiffs need not allege nor prove "disparate treatment" to recover under §§ 1981 and 1982. *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 330–31 (7th Cir.1974). Defendants whose racial animus motivates them to interfere with the rights of black tenants cannot escape liability under §§ 1981 and 1982 merely because, in the process, they have injured some white tenants as well. *See Avery v. City of Chicago*, 501 F.Supp. 1 (D.C.Ill.1978) (plaintiffs who allege that defendant city terminated *all* low-cost housing in particular neighborhood for purpose of driving out blacks stated a claim for relief under §§ 1981 and 1982).

Here, plaintiffs allege that defendants intentionally interfered with the statutory and property rights of § 8 tenants because they were black. They also allege that one of the defendants specifically stated that defendants' actions were aimed at landlords of § 8 tenants, and that most § 8 tenants are black. The claim that defendants acted with racial animus is thus more than "merely conclusory." Though plaintiffs will ultimately have to prove that defendants intended to discriminate against black tenants, they need not allege nor prove that *only* black tenants and their landlords were affected by defendants' conduct. Plaintiffs have stated a claim for relief under Counts I and II.

*Count VII*

■ In Count VII, plaintiffs allege that defendants refused to approve plaintiffs' rehabilitation plans "in retaliation for plaintiffs filing charges of housing discrimination with the State of Illinois Department of Human Rights." Defendants seek dismissal on the grounds that Illinois has not recognized a cause of action for such retaliation.

In *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), and *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979), the Illinois Supreme Court implied a cause of action for retaliatory discharge. Plaintiffs point to these two cases in arguing that Illinois courts would employ notions of public policy to imply a similar cause of action for governmental retaliation against its citizens.

Plaintiffs are correct that defendants' alleged conduct violated the public policy of Illinois. Illinois Human Rights Act, Ill. Rev.Stat.1979, ch. 68, § 6–101(A) specifically prohibits "retaliat[ion] against a person because he or she has opposed that which he or she reasonably and in good faith believes to be ... unlawful discrimination."

Ironically, however, the very statute which proves plaintiffs' point also defeats its claim. *Palmateer* and *Kelsay* "recognized the tort of retaliatory discharge precisely because there was no other remedy available to vindicate the public policy involved." *Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 89 (D.C.Ill.1982). The Illinois Human Rights Act, however, specifically provides a remedy for the retaliation alleged here, and makes that remedy exclusive. Ill.Rev.Stat.1979, ch. 68, § 8–111(D). In light of this statutory remedy and the coherent administrative scheme created to enforce it, this court will not imply a cause of action here. *See Ring v. R.J. Reynolds Inc.*, 597 F.Supp. 1277, 1281 (N.D.Ill.1984) ("no cause of action exists in Illinois for wrongful discharge in violation of the public policy contained in the IHRA").

*Count VIII*

■ Count VIII alleges intentional infliction of emotional distress. In Illinois, the elements constituting this tort are:

(1) extreme or outrageous conduct on the part of defendant;

(2) defendant's intention or reckless disregard for the probability of causing severe emotional distress;

(3) plaintiff's suffering severe emotional distress;

(4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.

*Farnor v. Irmco Corp.,* 73 Ill.App.3d 851, 854–55, 29 Ill.Dec. 894, 392 N.E.2d 591 (1979); *Eckenrode v. Life of America Insurance Corp.,* 470 F.2d 1, 4 (7th Cir.1972). *See also Public Finance Corp. v. Davis,* 66 Ill.2d 85, 87, 4 Ill.Dec. 652, 360 N.E.2d 765 (1975).

Defendants seek dismissal of this count on the grounds that plaintiffs have failed to sufficiently plead the first and third elements of this tort. They are mistaken.

According to the complaint, defendants engaged in a course of activity which included threats, harassment, abuse of power and, ultimately, termination of plaintiffs' business. Moreover, this conduct was motivated by discriminatory animus which, though not directed against plaintiffs, compounded its wrongfulness. This conduct is sufficiently "outrageous in character and [ ] extreme in degree as to go beyond all possible bounds of decency." *Public Finance Corp. v. Davis,* 66 Ill.2d at 90, 4 Ill.Dec. 652, 360 N.E.2d 765, *quoting* Restatement (Second) of Torts, § 46, comment d (1965). *See also Farnor v. Irmco Corp.,* 73 Ill.App.3d at 856, 29 Ill.Dec. 894, 392 N.E.2d 591 ("a finding that certain conduct is extreme and outrageous may arise from abuse by defendant of a position or relation ... which gives him actual or apparent authority to adversely affect the plaintiff's interests").

Plaintiffs have also alleged that "the actions of defendants ... did, in fact, cause plaintiffs to suffer from extreme and emotional distress. As a result, plaintiffs were caused to suffer severe physical and mental pain and anguish." Complaint ¶ 53. While such an unsupported allegation would not suffice at trial, it is sufficient to withstand a motion to dismiss. *See, e.g., Farnor v. Irmco Corp.,* 73 Ill.App.3d at 856–57, 29 Ill.Dec. 894, 392 N.E.2d 591. Plaintiffs have stated a claim for intentional infliction of emotional distress.

*Count IX*

██ Finally, Count IX alleges slander and defamation. The claim arises out of statements made by the Chicago Heights mayor in which he refers to landlords with § 8 tenants as "slum bums."

Defendants argue that this count fails to state a claim for two reasons. First, plaintiffs have not alleged special damages. *See Colucci v. Chicago Crime Commission,* 31 Ill.App.3d 802, 811, 334 N.E.2d 461 (1975) (where plaintiff bases slander claim on colloquium, "special damages must be alleged with particularity"). Second, the comments fall within the protection of the Illinois "fair comment and criticism" rule. *Action Repair, Inc. v. American Broadcasting Company,* 776 F.2d 143 (7th Cir. 1985) ("doctrine protects opinions in the public interest"); *Naked City, Inc. v. Chicago Sun-Times,* 77 Ill.App.3d 188, 190, 32 Ill.Dec. 661, 395 N.E.2d 1042 (1979) ("an opinion can never be false").

Both arguments have substantial merit. Plaintiffs have failed to plead special damages. Furthermore, the mayor's statements were nothing more than expressions of opinion on an issue of public interest. Indeed, plaintiffs did not even respond to these arguments in their memorandum in opposition to the motion to dismiss. Accordingly, this count will be dismissed.

## CONCLUSION

Defendants' motion to dismiss is granted for counts VII and IX. This dismissal is with prejudice. The motion is denied for Counts I, II, and VIII.