John HICKS, Plaintiff,

v.

**RESOLUTION TRUST CORPORATION** as Receiver for Clyde Federal Savings and Loan Association, Sylvia Meidema, Robert Ropa, Valerian Musselman, Nicholas Lash, Ernest Melichar, Erwin Kucera, Steven Kuroski, and Lydia Franz, Defendants.

No. 87 C 8593.

United States District Court,
N.D. Illinois, E.D.

May 23, 1990.

280

John Kneafsey, Stephen G. Kehoe, Nisen & Elliott, Chicago, Ill., for plaintiff.

George W. Groble, Groble & Groble, Ltd., Philip J. Fowler, Chicago, Ill., Edward J. O'Meara, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

This matter is before the court on plaintiff's motion to vacate a judgment of dismissal with prejudice and for leave to file a fourth amended complaint.

■ Initially, there is a disagreement between the parties as to whether plaintiff filed a timely motion to vacate the judgment.[1] As plaintiff points out in his brief, this court, by inadvertence, failed to comply with FRCP Rule 58 which requires judgment to be entered on a separate document. Rule 58 provides in relevant part: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Rule 58 is designed to make certain when a judgment is effective in order to determine with certainty the time for filing notices of appeal and post-judgment motions. *United States v. Indrelunas*, 411 U.S. 216, 220–22, 93 S.Ct. 1562, 1564–65, 36 L.Ed.2d 202 (1973). In the instant case, when plaintiff attempted to file his motion for leave to file his fourth amended complaint, defendant objected because plaintiff had not moved to vacate the judgment of dismissal. The court granted plaintiff leave to file a motion to vacate in the mistaken belief that judgment pursuant to Rule 58 had been entered. Defendant argues that plaintiff's motion to vacate was not filed within ten days of the judgment and is therefore untimely and should be considered under FRCP Rule 60. However, Rule 58 is designed to avoid just this type of uncertainty and in light of this court's inadvertent failure to comply with Rule 58 any doubts should be resolved against finality. See *Chicago Housing Tenants Organization, Inc., v. Chicago Housing Authority*, 512 F.2d 19, 21 (7th Cir 1975). Accordingly, plaintiff's motion will be considered a motion for leave to file a fourth amended complaint and not as a motion to vacate judgment pursuant to FRCP Rule 59 or Rule 60.

### *Retaliatory Discharge Under Illinois Law*

■ The court, in its order entered March 16, 1990, dismissed plaintiff's third amended complaint with prejudice for failure to state a cause of action for retaliatory discharge under Illinois law. 736 F.Supp. 812. Plaintiff seeks leave of the court to file his fourth amended complaint which again seeks to state a cause of action for retaliatory discharge under Illinois law. Plaintiff's fourth amended complaint adds additional legal and factual allegations which were not raised in plaintiff's prior complaints. Defendant argues these new allegations do not relate back to plaintiff's earlier complaint and are barred by the two year statute of limitations on tort actions in Illinois. Ill.Rev.Stat. ch. 110, par. 13–202 (Smith–Hurd 1984). Plaintiff contends that the cause of action, i.e., retaliatory discharge, is the same as prior complaints and arises out of the same facts already alleged. The court will address the relation back issue later in this opinion. Even if the court were to accept plaintiff's contentions that the new factual and legal allegations relate back to the original complaint, plaintiff's fourth amended complaint continues to fail to state a cause of action for retaliatory discharge under Illinois law.

Plaintiff's third amended complaint for retaliatory discharge alleged in substance that his employer, defendant Clyde, was violating the Federal Community Reinvestment Act ("CRA"). 12 U.S.C.A. §§ 2901 et seq. (West 1989). Specifically, Clyde, through the action of defendant board members, failed to adequately advertise its loan services and failed to provide VA and FHA mortgage programs to low and moderate income areas of Clyde's designated CRA community. Plaintiff alleged that Clyde and the board's failure and refusal to adequately advertise these services violated the CRA and was done with the inten-

---

1. The Resolution Trust Corporation was appointed receiver for the defendant, Clyde Federal Savings and Loan Association, during the pendency of these proceedings and was substituted in as a defendant.

tion to discriminate in the providing of loan services to black persons and persons of low and moderate income within Clyde's CRA community. Plaintiff alleged that his attempts to obtain Clyde's compliance with the CRA and to stop the alleged discrimination were rejected by Clyde and its board members. Plaintiff alleged that he was fired by the board in retaliation for his attempts to obtain Clyde's compliance with the CRA.

Plaintiff's fourth amended complaint adds the additional allegations that Clyde's actions violated federal civil rights laws and certain federal regulations concerning applications for loan programs with the Federal Home Loan Bank Board ("FHLBB") and the Department of Housing and Urban Development ("HUD"). Plaintiff's fourth amended complaint alleges that in signing a series of purchase and servicing agreements with the FHLBB concerning certain loans by Clyde, Clyde guaranteed that it had complied with all applicable federal civil rights laws and other anti-discrimination legislation including the CRA. Similarly, in applying for authorization with HUD to provide VA and FHA mortgage loans, Clyde guaranteed that it was in compliance with all federal anti-discrimination laws including the CRA. These assertions of compliance were false in light of Clyde's CRA violations. Plaintiff also alleged that he refused to sign a loan purchase contract on behalf of Clyde with the FHLBB because he knew the warranties of compliance were false in light of the CRA violation by Clyde. Over plaintiff's objections, the board authorized Clyde to enter into the agreement which contained guarantees as to Clyde's compliance with federal antidiscrimination laws and regulations. Plaintiff also alleged for the first time that in response to inquiries from the FHLBB about Clyde's CRA compliance, plaintiff responded to the FHLBB that although Clyde was not yet meeting CRA requirements, Clyde was undertaking to remedy the situation. Plaintiff, in addition to his prior allegations that he was fired for seeking Clyde's compliance with the CRA, alleges in his fourth amended complaint that (1) he was fired because the board wanted to cover up the fact that they had submitted applications to the FHLBB and HUD which falsely stated their compliance with federal anti-discrimination legislation and regulation; and (2) he was fired because he had advised the FHLBB that Clyde's CRA compliance statement was false.

The substance of plaintiff's cause of action is still the same. Plaintiff claims he was fired in retaliation for seeking to prevent and/or remedy Clyde's allegedly discriminatory lending practices as evidenced by Clyde's failure or refusal to adequately advertise or otherwise provide loans in black, and low and moderate income areas of Clyde's CRA community pursuant to the requirements of the CRA.

The court recognizes the serious and disturbing nature of plaintiff's allegations. However, plaintiff's reliance on the CRA and federal civil rights law does not answer the question of whether the Supreme Court of Illinois would recognize a cause of action for the tort of retaliatory discharge in Illinois. The relevant inquiry on the issue has already been addressed in this court's March 16, 1990 order and will not be restated here. Upon further consideration and research, the court has found additional support for its determination of March 16, 1990 that plaintiff cannot state a cause of action under Illinois law.

As indicated by the Illinois Supreme Court, the public policy of the State of Illinois is to be found in the State's constitution, statutes, and when they are silent, in its judicial decisions. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). The public policy of Illinois concerning violations of civil rights, including discrimination based upon race, is to be found in the Illinois Human Rights Act ("IHRA"). Ill. Rev.Stat. ch. 68, par. 1–101 et seq. (Smith–Hurd 1989); *Mein v. Masonite Corporation*, 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985); *Dale v. City of Chicago Heights*, 672 F.Supp. 330 (N.D.Ill.1987). Section 4–102(A) of the IHRA prohibits unlawful discrimination by financial institutions, like defendant Clyde, in the denial of its services which it normally offers. Ill.

Rev.Stat. ch. 68, par. 4–102(A) (Smith–Hurd 1989). Further, Section 6–101 of the IHRA makes it a civil rights violation in Illinois for a person, or two or more persons, to conspire to retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination as defined under the IHRA. Ill.Rev.Stat. ch. 68, par. 6–101(A) (Smith–Hurd 1989). Therefore, there is a public policy in Illinois against Clyde's alleged discriminatory practices in providing its loan services. However, the IHRA in section 6–101(A) specifically provides a remedy for the type of retaliatory discharge alleged by plaintiff. Further, the IHRA provides a coherent administrative enforcement procedure designed to remedy an alleged retaliatory discharge in violation of the public policy of the IHRA. See Ill.Rev.Stat. ch. 68, par's. 7–101 et seq., 8–101 et seq. (Smith–Hurd 1989); *Dale*, 672 F.Supp. 330. Additionally, and most importantly, the remedy under the IHRA is exclusive. Ill.Rev.Stat. ch. 68, par. 8–111(C) (Smith–Hurd 1989).

One of the main reasons the Supreme Court of Illinois recognized an independent civil cause of action for the tort of retaliatory discharge was the absence of a remedy to vindicate the public policy involved. *Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 89 (N.D.Ill.1982). However, the Illinois legislature has provided a remedy for retaliatory discharge as alleged by plaintiff. In light of the exclusive provisions of the IHRA, which specifically deny the state courts of Illinois jurisdiction over independent actions for civil rights violations under the IHRA, it is clear that the Illinois Supreme Court would not recognize a civil cause of action for the tort of retaliatory discharge as alleged in plaintiff's complaints. See *Mein*, 109 Ill.2d 1, 92 Ill. Dec. 501, 485 N.E.2d 312; *Seehawer v. Magnecraft Electric Co.*, 714 F.Supp. 910 (N.D.Ill.1989); *Dale*, 672 F.Supp. 330; *Brudnicki*, 535 F.Supp. 84. If the Illinois Supreme Court were to allow such an action, it would defeat the intention of the Illinois legislature to avoid direct access to the courts for retaliatory discharges based upon violations of the public policy expressed in the IHRA. See *Mein*, 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312.

### Federal Whistleblower Protection

▮▮▮ Plaintiff in his motion, in one sentence, raises for the first time the argument that his firing violates federal law. Plaintiff cites section 1831j of the Federal Deposit Insurance Act. See 12 U.S.C.A. §§ 1811 et seq. (West 1989). The Federal Deposit Insurance Act was amended as of August 9, 1989 by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRRE"), which added section 1831j. Pub.L. No. 101–73 § 932, 103 Stat. 494 (1989), codified at 12 U.S.C.A. § 1831j (West 1989). Section 1831j provides protection to whistleblowers under certain circumstances. Section 1831j provides:

**(a) Prohibition against discrimination against whistleblowers**

No federally insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or to the Attorney General regarding a possible violation of any law or regulation by the depository institution or any of its officers, directors, or employees.

**(b) Enforcement**

Any employee or former employee who believes he has been discharged or discriminated against in violation of subsection (a) of this section may file a civil action in the appropriate United States district court before the close of the 2–year period beginning on the date of such discharge or discrimination. The complainant shall also file a copy of the complaint initiating such action with the appropriate Federal banking agency.

**(c) Remedies**

If the district court determines that a violation of subsection (a) of this section has occurred, it may order the

depository institution which committed the violation—

(1) to reinstate the employee to his former position,

(2) to pay compensatory damages; or

(3) take other appropriate actions to remedy any past discrimination.

**(d) Limitation**

The protections of this section shall not apply to any employee who—

(1) deliberately causes or participates in the alleged violation of law or regulation; or

(2) knowingly or recklessly provides substantially false information to such an agency or the Attorney General.

12 U.S.C.A. § 1831j (West 1989).

Plaintiff's fourth amended complaint alleges for the first time that he informed the FHLBB in addition to Clyde's board, of Clyde's noncompliance with the CRA as well as the falsity of Clyde's CRA compliance statement and that plaintiff was discharged in retaliation for such actions. These allegations state a claim under section 1831j. 12 U.S.C.A. § 1831j(a) (West 1989). Section 1831j(b) requires the complaint to be filed within two years of the discharge. Plaintiff was discharged April 24, 1987, more than two years before he attempted to file his fourth amended complaint. However, the court finds the relation back provisions of FRCP Rule 15(c) applicable to this additional factual allegation. Rule 15(a) provides that leave of the court to amend the pleadings shall be freely given when justice so requires. A complaint merely serves to put the defendant on notice and is to be freely amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant. *Toth v. USX Corp.*, 883 F.2d 1297 (7th Cir 1989). The court finds the additional allegation concerning plaintiff's informing the FHLBB about Clyde's compliance with the CRA to arise out of the same conduct, transaction or occurrence set forth in plaintiff's original complaint, which was filed well within the two year requirement of section 1831j(b). All of plaintiff's complaints have alleged he was fired in retaliation for attempting to remedy Clyde's noncompliance with the CRA. Since plaintiff was Clyde's officer in charge of CRA compliance, defendants could hardly argue surprise or prejudice from the additional allegation that plaintiff informed the FHLBB of Clyde's alleged failure to comply with the CRA in response to inquiries by the FHLBB concerning Clyde's compliance with the CRA.

## *Retroactive Application*

■ The next issue the court must address is whether to apply section 1831j which became effective August 9, 1989 to plaintiff's discharge which occurred April 24, 1987. The controlling law in the area of retroactive application of new federal law to pending cases is *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). "A court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. Under *Bradley*, a court is to apply the law in existence at the time it renders its decision unless it determines that (1) a manifest injustice would result, or (2) there is a statutory direction or legislative history indicating that the applicable law is the old law. *Aledo–Garcia v. Puerto Rico National Guard Fund, Inc.*, 887 F.2d 354 (1st Cir 1989).

## *Statutory Direction/Legislative History*

It is not necessary to find affirmative support for retroactive application in a statute or its legislative history in order to apply it to a pending case. A statute is presumed to apply to cases pending at the time it becomes effective unless there is a clear indication that it is not to apply. *U.S. v. Marengo County Commission*, 731 F.2d 1546 (11th Cir 1984); *U.S., ex rel. LaValley v. First National Bank of Boston*, 707 F.Supp. 1351 (D Mass 1988). The court's review of the FIRRE, and specifically section 932 which added section 1831j to the Federal Deposit Insurance Act, does not reveal any statutory direction against appli-

cation of section 1831j to pending cases. Pub.L. 101–73, §§ 101 et seq:, 103 Stat. 183 et seq. (1989); 12 U.S.C.A. § 1831j (West 1989). Nor does the court's review of the legislative history of the FIRRE indicate that Congress did not intend for the protection of whistleblowers to apply to pending cases. See H.R.Rep. No. 101–54, 101st Cong., 1st Sess. 291 et seq. (1989), reprinted in USCCAN 86 et seq. (1989); H.C.Rep. No. 101–222, 101st Cong. 1st Sess. 393 et seq. (1989), reprinted in USCCAN 432 et seq. (1989). In fact, the first purpose of the FIRRE listed is the promotion "through regulatory reform, [of] a safe and stable system of affordable housing finance." Pub.L. 101–73 § 101(a), 103 Stat. 187 (1989). "Promoting the availability of affordable housing has been a primary goal of the Federal government for many years." H.R.Rep. No. 101–54 part I at 294, USCCAN at 90 (1989). One of the primary purposes of the FIRRE is to provide affordable housing mortgage finance and housing opportunities for low and moderate income individuals. H.R.Rep. No. 101–54 part I at 307, USCCAN at 103 (1989). These purposes are furthered by protecting persons who inform the government agencies in charge of enforcing the regulations of instances where federal regulations or laws are violated. The FIRRE was passed in response to a crisis situation in the thrift industry and was designed to have an immediate impact on attempts to minimize losses in the industry and the costs to the American taxpayer while reestablishing a healthy and efficiently functioning thrift industry which can provide an affordable source of home mortgages to all individuals including low and moderate income individuals. See H.R.Rep. No. 101–54 part I at 307–312, USCCAN at 103–108 (1989). The legislative history of the FIRRE does not reveal any intent on the part of Congress that its provisions, specifically, section 932 which added protection for whistleblowers, should not be applied to cases pending at the time of its passage.

### Manifest Injustice

Under *Bradley,* an additional reason not to apply a new statute to a pending case is if to do so would result in a manifest injustice. Manifest injustice is examined in light of three factors: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change in law upon those rights. *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 717, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1974). All these considerations support applying section 1831j to this case.

The first factor is concerned with the public versus private nature of the dispute between the parties. *Bradley,* 416 U.S. at 718, 719, 94 S.Ct. at 2019–2020; *U.S. v. Marengo County Commission,* 731 F.2d 1546, 1554 (11th Cir 1984); *U.S., ex rel LaValley v. First National Bank of Boston,* 707 F.Supp. 1351, 1361 (D Mass 1988). Where issues of important public policy or national concern are involved, this factor weighs heavily in favor of retroactive application as opposed to situations involving merely private disputes. *Bradley,* 416 U.S. at 717–718, 94 S.Ct. at 2019–2020. The FIRRE addresses a major national problem: the rampant fraud and mismanagement within the thrift industry and the need to strengthen the government's ability to prevent such abuses. To this end, the addition of section 1831j to the Federal Deposit Insurance Act promotes the ability of the federal regulatory agencies to do their job by offering protection to employees within the regulated industry who supply information to the regulators or other enforcement authorities concerning possible violations of federal law. The instant case involves more than just a decision to fire an employee. It involves a decision to fire an employee for his attempts to remedy alleged violations of federal law concerning the thrift industry. Clearly, the matter is one effecting a major public concern. See, e.g., *U.S., ex rel La Valley,* 707 F.Supp. 1351 (amendment expanding ability of private individual to bring claim on behalf of United States under False Claims Act effected matter of major public concern in the recovery of public funds obtained by fraud). The nature of the parties

does not mitigate against applying section 1831j to pending cases.

The second consideration, the nature of the rights, is intended to protect personal rights that have "matured or become unconditional". *Bradley*, 416 U.S. at 720, 94 S.Ct. 2020. Defendants right is the right to fire an employee for providing information to a federal banking agency concerning the possible violation of regulations with which defendant, Clyde, and its board are obligated to comply in the first instance. Defendants do not have a vested right in violating federal law and discharging employees who attempt to inform the government of such violations. See, e.g., *Marengo County Commission*, 731 F.2d at 1554 (11th Cir 1984) ("No government entity has a 'vested right' to continue practices validly prohibited by Congress.") Plaintiff's right is the right not to be terminated on the basis that he provided federal regulators information concerning possible violations, a right the new law recognizes. The nature of the rights of the parties does not indicate a manifest injustice would result from retroactive application of section 1831j.

The third consideration, the nature of the impact of the new law upon existing rights, is concerned with the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard. *Bradley*, 416 U.S. at 721, 94 S.Ct. at 2021. While defendants were not liable under federal law for firing plaintiff, they were liable under Illinois law. Additionally, defendants have always been obligated to comply with the relevant federal laws against discrimination and other regulations of the thrift industry. The effect of applying section 1831j to defendants is to make it more difficult for defendants to cover up violations of federal law and regulations. Defendants never had a substantive right to violate federal laws regulating the thrift industry. See, e.g., *Bradley*, 416 U.S. at 720–721, 94 S.Ct. 2020–2021 (board of education always had constitutional responsibility to provide non-discriminatory education). Nor is it likely that defendants would have altered their conduct in light of the 1989 amendment had they known of its possible application at the time of their conduct in firing plaintiff in 1987. See *Id.; U.S., ex rel La Valley*, 707 F.Supp. at 1363. The allegations of plaintiff's complaint, taken as true, imply that defendants did everything possible to avoid compliance with the CRA, including firing plaintiff. It appears unlikely that if plaintiff's allegations are true, that defendants would have altered their conduct because of the new law especially where the alleged conduct was already proscribed by the Illinois Human Rights Act. Applying the factors of *Bradley*, the application of section 1831j to the instant case would not result in a manifest injustice.

### *Plaintiff's Proposed Fourth Amended Complaint*

■ In addition to the allegation that plaintiff was fired for informing the FHLBB of Clyde's noncompliance with the CRA, plaintiff raises for the first time allegations concerning Clyde's applications to the FHLBB and HUD concerning certain loan programs. These allegations do not appear closely related to plaintiff's prior complaints. Plaintiff could have raised these allegations at an earlier time. Plaintiff does not provide a good reason for failing to timely raise these allegations. Extensive discovery has taken place directed at Clyde's CRA compliance and not directed at these new allegations. Plaintiff admits additional discovery on these allegations would be required. Defendants would be prejudiced if after two and one-half years of defending this case, they were now forced to address these new allegations. The court finds it would not be in the interest of justice to allow these new allegations to relate back to the original complaint. FRCP Rule 15(a); *Quaker State Oil Refining v. Garrity Oil Co.* (1st Cir 1989) 884 F.2d 1510; *McCarthy v. PainWebber, Inc.*, 127 F.R.D. 130 (N.D.Ill. 1989). Further, plaintiff's proposed fourth amended complaint does not allege a necessary element of a federal claim under section 1831j concerning these allegedly fraudulent applications. Plaintiff never alleges that he informed the FHLBB or HUD

about the allegedly fraudulent applications submitted to these agencies.

Finally, the court needs to address an argument raised by the individual board members, except Sylvia Meidama, concerning plaintiff's failure to name these defendants within the two year statute of limitations for tort actions in Illinois. This court never addressed the issue in its March 16, 1990 order because plaintiff, as a matter of law, could not state a claim under Illinois law. However, in light of the applicability of section 1831j of the Federal Deposit Insurance Act, the issue is raised of whether plaintiff's addition of these defendants for the first time in his third amended complaint, filed on January 22, 1990, should relate back to his original complaint filed within the two year limitations period of section 1831j. FRCP Rule 15(c) allows amendments, which add parties after a limitations period has run, to relate back if certain requirements are met. In order to relate back: (1) the claim against the proposed defendant must arise out of the same conduct set forth in the original complaint; (2) the proposed defendant must have received such notice, actual or constructive, of the institution of the original action that he will not be prejudiced in maintaining a defense on the merits; and (3) the proposed defendant knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the proposed defendant. FRCP Rule 15(c); *Hampton v. Hanrahan*, 522 F.Supp. 140 (N.D.Ill.1981). In the instant case, the original complaint was filed well within the two year limitations period and involved the actions of Clyde, through its board members towards plaintiff. The actions of the proposed defendants have always been at issue. These new defendants and their actions have been the subject of discovery. In light of the relationship between Clyde and these additional defendants, i.e., they are members of Clyde's board, there appears to be no prejudice to these defendants from charging them with notice of the suit and requiring them to defend the case on the merits. See *Hampton*, 522 F.Supp. 140 (allowed addition of City and County as defendants to suit where origi-

nal defendants were officers and officials of the City and County). The purposes of Rule 15(c) are accomplished if the initial complaint gives the proposed defendants fair notice that the litigation arises out of specific factual allegations concerning their actions. *Id.* The facts of this case are similar to those in *Hampton*, in which a favorable change in law allowed the plaintiff to sue the City and County for civil rights violations after the period of limitations had run. *Id.* Nor is the requirement of "mistaken identity" of Rule 15(c) a bar to adding these defendants. Read in light of the overall purposes of Rule 15 and its liberal application in the interests of justice, Rule 15(c) is not limited solely to instances of misnomer. *Id.* Accordingly, the court finds that these defendants are not to be dismissed based upon plaintiff's failure to name them before his third amended complaint.

ORDERED: Plaintiff is granted leave to file his fourth amended complaint within fourteen days from the entry of this order subject to the following directions and limitations. Plaintiff's fourth amended complaint shall include properly plead facts as to: (1) this court's jurisdiction arising under federal law; (2) all necessary allegations concerning Clyde's status as a federally regulated institution to which section 1831j of the Federal Deposit Insurance Act applies; (3) only those facts, as indicated in this opinion, relevant to plaintiff's claim concerning his discharge in alleged violation of 12 U.S.C. § 1831j for reporting Clyde's noncompliance with the CRA to the FHLBB. Additionally, plaintiff shall file a copy of the fourth amended complaint with the appropriate federal banking agency as required pursuant to 12 U.S.C. § 1831j(b). Plaintiff shall submit proof of his compliance with section 1831j(b) to the court within seven days of the filing of his fourth amended complaint. If plaintiff fails to file his fourth amended complaint within fourteen days from the entry of this order, the Clerk of this court is directed to enter a judgment dismissing plaintiff's complaint.