**Charles BROWN, Plaintiff,**

v.

**STATE'S ATTORNEY,
et al., Defendants.**

**No. 91 C 1568.**

United States District Court,
N.D. Illinois, E.D.

Feb. 4, 1992.

Charles Brown, pro se.

Terry L. McDonald, William P. Pistorius, Cook County State's Attys., Chicago, Ill., for defendant State's Attorney.

Kelly Raymond Welsh, John F. McGuire, Yvonne Denise Spradley, City of Chicago, Law Dept., Corp. Counsel, Chicago, Ill., for defendants Dale Altman and Peggy O'Connor.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Charles Brown, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Cook County State's Attorney, police officers Peggy O'Connor and Dale Altman, United States Probation Officer

Ronald Krumke, and alleged police informants Clifford Perkins and Khili Lutfi (a/k/a Kahmil Lufti).[1] Currently before this court are defendants Altman, O'Connor, and Krumke's motions to dismiss Brown's complaint for failure to state a claim. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## I. Motion to Dismiss Standard

It is settled law that the allegations within a *pro se* complaint, "however inartfully pleaded [are held] to less stringent standards than formal pleadings drafted by lawyers...." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *see also Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980). "Such a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Haines*, 404 U.S. at 520–21, 92 S.Ct. at 596); *see also Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). As always, in ruling on defendants' motions to dismiss, the court accepts as true the factual allegations of the complaint. *See Hughes*, 449 U.S. at 10, 101 S.Ct. at 176 (citing *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)).

## II. Background

The allegations of Brown's amended complaint detail an intriguing tale of vengeance and conspiracy. Brown's story begins on June 26, 1990, at which time he was arrested by state authorities and charged with one count of criminal sexual assault, Ill.Rev.Stat. ch. 38, § 12–13(a), and one count of aggravated criminal sexual assault, Ill.Rev.Stat. ch. 38, § 12–14(b). The gravamen of Brown's conspiracy allegations is that the charges for which he was arrested on June 26, 1990, were fabricated in retaliation for unspecified past actions. According to Brown, the specific purpose of the conspiracy was to confine him for an indefinite period of time, thereby enabling defendants to steal from his apartment an estimated $100,000 in property and legal documents.

Within a week after the arrest, officers Altman and O'Connor conducted a search of Brown's premises pursuant to a valid search warrant. Altman and O'Connor allegedly utilized Perkins and Lutfi, paid police informants, to effectuate the search. At that date nothing incriminating was seized. After this initial search, Perkins and Lutfi purportedly entered Brown's apartment on multiple occasions without authorization, attempting to steal, among other items, a black and white IBM typewriter. During the period of the unauthorized break-ins, Brown's landlord repeatedly sought help from the police. These pleas, however, were of no avail, as Altman and O'Connor allegedly had initiated and directed the invasions.

Krumke's role in the conspiracy against Brown was much more innocuous than that of either Altman or O'Connor. Brown claims that Krumke, a United States Probation Officer, used his position to unlawfully detain Brown, enabling Altman and O'Connor to administer their "scheme." At the

---

**1.** Although named in Brown's initial complaint, neither the Chicago Police Superintendent nor the United States Probation Department is named in the first-amended complaint, and they are dismissed as defendants in this action. Additionally, while Brown's amended complaint names the Cook County State's Attorney in the introductory caption, the allegations set forth in the body of the pleading omit any reference to the State's Attorney. In the absence of any allegation of (1) personal involvement on the part of the State's Attorney, or (2) a policy or custom directly causing the alleged deprivation, we dismiss the Cook County State's Attorney from this suit. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir.1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints."). With regard to defendants Perkins and Lutfi, service of process has not been executed against such individuals. As more than 120 days has passed since the filing of Brown's complaint, and in the absence of a showing of good cause on the part of Brown, we dismiss the action against both Perkins and Lutfi. *See* Fed.R.Civ.P. 4(j).

time of his arrest on June 26, 1990, Brown was serving a five-year term of probation in connection with a prior federal conviction. Krumke was the probation officer assigned to Brown's case. After a careful investigation of the charges leading to Brown's arrest, Krumke concluded that Brown had violated the conditions of his probation and was a danger to the community. Thus, Krumke submitted to this court—the court that sentenced Brown for his federal conviction—a report regarding Brown's arrest and requesting the issuance of a bench warrant to be lodged as a detainer against Brown. Indeed, this court on July 6, 1990, entered an order that a bench warrant be issued and lodged against Brown for violation of his probation.

On March 14, 1991, Brown filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, naming Altman, O'Connor, and Krumke as defendants. In his first-amended complaint, Brown indiscriminately alleges violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Altman, O'Connor, and Krumke now move to dismiss all counts against them, both in their individual and official capacities.

### III. Discussion

■ In order to state a claim under § 1983, a plaintiff must allege two things: (1) that the defendant was acting under the color of state law, and (2) that his conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (overruled in part, not relevant here, by *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Regarding the first element, Brown sufficiently alleges that Altman and O'Connor were acting under color of state law by means of the authority given to them by the State of Illinois as employees of the Chicago Police Department. While ordinarily § 1983 has

no application to actions against federal officials such as Krumke, *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), where a federal official has acted "in complicity with ... state officials, and the injury to the plaintiff[ ] was perpetrated under color of state law, the federal official[ ] is subject to suit under 42 U.S.C. § 1983." *Hampton v. Hanrahan*, 522 F.Supp. 140, 146 (N.D.Ill.1981). In the instant case, Brown's only allegation against Krumke is that he voluntarily became an accomplice to Altman and O'Connor's scheme. Accordingly, based on the facts as detailed in Brown's amended complaint, Krumke is subject to liability under § 1983.[2] We now turn to the issue of whether Brown's allegations of harm give rise to a claim of deprivation secured by the Constitution or laws of the United States.

■ Brown's assertion of conspiracy against Krumke is readily disposable. To establish a prima facie case of a § 1983 conspiracy, a plaintiff must show: "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Pontarelli Limousine, Inc. v. City of Chicago*, 704 F.Supp. 1503, 1509 (N.D.Ill.1989) (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir.), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988)); *see also Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir.1991). The allegations in Brown's amended complaint do not satisfy the first element of a § 1983 conspiracy claim.

In order to expose Krumke as a willing participant in the alleged conspiracy, Brown asserts that "Altman and O'Connor contacted Krumke and informed him of plaintiff's arrest." First–Amended Complaint at 5b, ¶ 11. According to Brown, this contact with Altman and O'Connor, coupled with Krumke's subsequent con-

---

**2.** We note that, had Brown alleged independent unconstitutional conduct on the part of Krumke, Brown could have maintained an action based directly on the section of the Consti-

tution violated by the federal official. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

duct, provides a sufficient basis to conclude that he agreed to deprive Brown of his constitutional rights. We disagree. First, that Altman and O'Connor contacted Krumke regarding a violation of the terms of Brown's probation in no way indicates voluntary participation in a conspiracy to deprive Brown of his constitutional rights. Indeed, this type of communication between state law enforcement officers and the United States Probation Office is not only commendable, but essential to the supervision of probationers. Second, Krumke's conduct of reporting Brown's arrest to this court is likewise nonprobative of Krumke's agreement to participate in a conspiracy. To the contrary, Krumke was mandated by law to notify the sentencing court of Brown's transgression. *See* 18 U.S.C. § 3603(2) (Supp.1991). Accordingly, we dismiss all claims against defendant Ronald Krumke.

■ Cutting through the various conclusory statements of retaliation and fabrication, the factual allegations against Altman and O'Connor can be summarized as follows: Altman and O'Connor directed Perkins and Lufti to break into Brown's apartment after his arrest on June 26, 1990, for the ultimate purpose of stealing plaintiff's property. Presumably, the officers' desire to pilfer is attributable to their initial opportunity to survey the premises during the original search conducted under the authority of a valid warrant. The fundamental question before this court is whether this alleged behavior could possibly support a deprivation of constitutional magnitude.

Of the various constitutional amendments haphazardly referenced in Brown's amended complaint, the Fourth Amendment as applied to the states through the Fourteenth Amendment provides the standards against which Altman and O'Connor's action must be appraised. Clearly, the intrusion into Brown's apartment constitutes a search for Fourth Amendment purposes. There can be no question that Brown possesses a reasonable expectation of privacy in his home. As stated in *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980):

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated."

*See also Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion."). Moreover, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586, 100 S.Ct. at 1380. The invasions as alleged in Brown's amended complaint were not only warrantless, but were for the exclusive purpose of perpetrating a crime (*i.e.*, theft). To the extent that Brown can prove these allegations, he most certainly would be entitled to relief under the Fourteenth Amendment.[3]

The fact that Altman and O'Connor were not the actual parties who invaded Brown's apartment does not relieve them of personal liability for such a violation. While it is well settled that an individual can be held liable under § 1983 only if "he caused or participated in an alleged constitutional deprivation," *see Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983)), an official's direct participation need not be alleged. As the court stated in *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985): "An official satisfies the personal responsibility requirement of section

---

**3.** Given the deferential review afforded *pro se* plaintiffs, the failure to detail the exact number of intrusions along with the specific times of occurrence does not defeat Brown's search and seizure claim at this stage of the proceedings. We note, however, that these facts will be essential for the purposes of any motion for summary judgment.

1983 if she acts or fails to act with deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." In the instant case, Brown has pleaded facts which, if true, are sufficient to establish that the alleged deprivation occurred at Altman and O'Connor's direction, or at the very least with their knowledge and consent. *See* First Amended Complaint at 5a–b, ¶ 12 ("O'Connor then contacted the building owner and stated: Now that Brown (plaintiff) is charged with new crimes, for which he can not win, I will have Perkins and Lutfi stop breaking in and victimizing you."); *id.* at 5a, ¶ 8 (To cover up the removal of Brown's property, "Perkins and Lutfi arrived, accompanied by six (6) men, wearing Cook County Sheriffs' jackets, having orders and permission from Altman and O'Connor, to remove what items they cared to."); *id.* at 5a, ¶ 5 ("Plaintiff contends that these break-ins were perpetrated with the knowledge of Altman and O'Connor.").

Brown's effort, however, to hold Altman and O'Connor liable in their official capacities is to no avail. A suit against a state officer in his official capacity is essentially an action against the state entity by which the officer is employed. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985); *Burmeister v. Stone*, 751 F.Supp. 759, 760 (N.D.Ill. 1990). Government entities, such as Cook County, cannot be held liable unless an official policy or custom caused the constitutional violation asserted in the complaint. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990). Brown makes no claim of an official policy or custom. Nor has he attempted to establish "a pattern of conduct or a series of acts violative of constitutional rights ... [that might give rise to] an inference of municipal policy." *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir.1981); *see also Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Accordingly, we dismiss all claims against Altman and O'Connor in their official capacity.

### IV. Conclusion

For the reasons as set forth above, we grant Krumke's motion to dismiss for failure to state a claim upon which relief may be granted. Altman and O'Connor's motion to dismiss is granted in part and denied in part. Remaining in this action is Brown's unlawful search and seizure claims against Altman and O'Connor in their individual capacities. It is so ordered.